**Winston McDONALD, Plaintiff,**

**v.**

**HEAD CRIMINAL COURT SUPERVISOR OFFICER, Ronald Miegel, John Doe 3 044, John Doe 3 0012, John Doe District Attorney, Defendants.**

No. 86 Civ. 2070 (RWS).

United States District Court, S.D. New York.

Sept. 16, 1987.

---

Winston McDonald, pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Jeffrey I. Slonim, Lisa R. Dell, Asst. Attys. Gen., of counsel.

## OPINION

SWEET, District Judge.

Defendants Head Criminal Court Supervisor Officer, Ronald Miegel, John Doe #044, John Doe #00012, and John Doe District Attorney (collectively "defendants") have moved pursuant to Fed.R. Civ.P. 37(b)(2)(C) for an order dismissing plaintiff Winston McDonald's ("McDonald") complaint with prejudice. For the reasons set forth below, the motion is granted, and the complaint dismissed.

**Prior Proceedings**

At issue is McDonald's willful disobedience of a number of court orders directing his deposition. On September 10, I issued the first of these orders, directing then that McDonald's deposition go forward at the Fishkill Correctional Facility on October 30, 1986. When defendants' counsel, an Assistant Attorney General of the State of New York, arrived at the facility, McDonald refused to go forward with the deposition because he had not been able to retain counsel, and was awaiting a ruling from the court on his request for appointment of counsel. Defendants' counsel thereupon asked the court's permission to move for dismissal of McDonald's complaint, which was denied in an opinion dated February 6, 1987, as was McDonald's request for appointment of counsel. The court directed the clerk to mail McDonald a copy of *The Legal Aid Society, Directory of Civil Legal Services Office in New York* (May 1986) to aid McDonald in his search for counsel, and also directed—pending retention of counsel or a showing sufficient under *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986) to warrant appointment of counsel—that McDonald's deposition would go forward. Specifically, the opinion provided:

> In the meantime, the court orders that the deposition of McDonald go forward, with all McDonald's rights preserved to object to the testimony after the completion of the deposition. McDonald is directed to answer all questions put to him, and the Assistant Attorney General is directed not to direct the stenographer to go off the record except with McDonald's consent.

Slip op. at 3.

The direction in the order that the stenographer was not to go off the record except with McDonald's consent was included because McDonald alleged in communications with the court that the Assistant Attorney General had prevented him from making a necessary record by unfair control of the stenographer.

The Attorney General was directed to submit an order scheduling a new deposition, which was done and the order was duly signed by the Hon. Robert L. Carter, sitting in Part I of this court. Before the scheduled deposition, McDonald wrote the court: "I would really like to know what makes you fell that I was about to change my mind and go a head and let another lawyer question me, without I have counsel present on my behalf. I only hope you will of resign your self from this case." [sic]

Lest McDonald was suffering any misapprehension that he would get two bites at violating a court order, shortly after receipt of his letter, the court issued a Memorandum Opinion and Order on April 2, 1987 which directed:

> The deposition will go forward as scheduled on April 28, 1987. McDonald will answer all questions put to him, and his rights will be preserved to object to the testimony after the completion of the deposition. The Assistant Attorney General is ordered not to direct the stenographer to go off the record during the deposition without McDonald's consent.

> McDonald is directed to make no further applications until after the deposi-

tion. In addition, McDonald is reminded that direct violation of an order of the court may constitute contempt of court, and may lead to other serious sanctions such as dismissal of the complaint.

### The April 28 Deposition

McDonald attended the deposition on April 28, and in the morning answered Assistant Attorney General Lisa Dell's ("Dell") questions for about an hour before Dell requested a break for lunch. Defendants have not pointed to any deficiency in McDonald's conduct during this session over the course of the morning.

 After a fifteen minute lunch break, Dell resumed questioning. During this session, McDonald refused to answer a number of questions on various grounds, and refused to execute a form which would give the defendants access to McDonald's medical records. The questions that McDonald refused to answer included questions about injuries that he sustained to his back before admission to the New York State correctional system, questions concerning the offense for which he was presently incarcerated, his criminal history, alleged alcohol related offenses, alleged disorderly conduct offenses, alleged multiple aliases, other pending lawsuits against state employees, and his wife's address (his wife is identified in the complaint as an eyewitness to some of the events). For some of these questions he invoked his Fifth Amendment privilege, for others he simply refused to answer because he believed the information was not relevant to the suit. Among those he declined to answer on relevancy grounds were questions about the condition of his back before the alleged incident, questions seeking his wife's address, and questions about other civil actions he had filed. His refusal to answer questions about his arrest record, ostensibly on Fifth Amendment grounds, is not a colorable exercise of the privilege.[1]

Several times during the deposition, Dell directed McDonald's attention to the Court's order "to answer all questions put

to him," and reminded him that all rights to object to questions would be preserved until after the completion of the deposition. After one of these reminders, McDonald rejoined, "the Judge can go to hell, that Judge."

### Applicable Law

The Federal Rules of Civil Procedure provide:

> If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed.R.Civ.P. 37(b)(2)(C).

For the purpose of this application, McDonald's refusal to execute a medical release form will not be considered, as he was under an order which directed him to answer all questions, but which did not explicitly direct him to turn over his medical records. Thus his refusal to do so, while not warranted, may not constitute direct violation of a court order.

Similarly, McDonald's refusal to answer questions by invoking his Fifth Amendment privilege will not be considered. When a plaintiff invokes the Fifth Amendment in defending his deposition, he implicates not only his right against self-incrimination, but also his due process right to a judicial determination of his civil action and the defendants' right to a fair trial. *See Wehling v. CBS*, 608 F.2d 1084, 1086–87 (5th Cir.1979), *reh'g denied*, 611 F.2d 1026 (1980); *see also Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir.1979); Note, *Plaintiff as Deponent: Invoking the Fifth Amendment*, 48 U.Chi.L.Rev. 158 (1981); Note, *Toward a Rational Treatment of Plaintiffs who Invoke the Privilege against Self-Incrimination During Discovery*, 66 Iowa L.Rev. 575 (1981).

---

1. While McDonald did offer to make his "rap sheet" available to counsel, counsel was certainly entitled to his testimony about when and for what he had been arrested as well.

Consideration of the proper remedy for McDonald's refusal to answer questions on Fifth Amendment grounds would require either a difficult balancing of the parties' respective Constitutional rights or an equally sensitive inquiry into the concept of waiver. Because it is possible to resolve this application on other grounds, McDonald's colorable invocations of the Fifth Amendment will not be considered. Consequently, the discussion below concerns only McDonald's refusal to answer questions for which he did not claim the privilege and the questions about his arrest record for which there was no remotely colorable claim of privilege.

■ In this Circuit, dismissal of an action pursuant to Rule 37(b) is a drastic penalty which should be exercised only under circumscribed conditions. *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986). There must be an order in place specifically directing testimony, and the violation of that order must be wilful, in bad faith or with fault, not merely because of a "misunderstanding." *Id.* Here, there was an explicit order in place, specifically directing McDonald to answer "all questions," and setting "what procedures were to be followed if a dispute arose over the manner of conducting the deposition," *id.* at 1131, to wit, McDonald was to answer the questions and all his rights to object were preserved for later. The court adopted this procedure because of the logistical difficulty inherent in taking repeated depositions at a prison, in this case a concern heightened because the Assistant Attorney General had already taken one fruitless trip in which McDonald violated an order to be deposed.

There can be little question here that McDonald's refusal was in bad faith. The order was explicit as to how the deposition would be conducted and how his objections could properly be made and ruled upon. The record shows that McDonald received a copy of the order, that he knew its contents, and, indeed, that the relevant section was read to him several times during the course of the afternoon session. This records shows no room for a "misunderstanding."

Sanctions lesser than dismissal would be inappropriate here. Many of counsel's questions were designed to explore areas useful only in defense, and, consequently, preclusion would actually help the errant party. *See Atlanta Shipping Corp. v. Cross & Brown*, 113 F.R.D. 108, 112 (S.D. N.Y.1986) ("An order of preclusion would be no more useful because most of the unanswered discovery demands involve information sought for defensive purposes."). At this juncture a stay and yet another order to answer would be inappropriate. McDonald has already had his one bite.

■ Courts have a special obligation to *pro se* plaintiffs prosecuting civil rights cases from prison. The disabilities under which prisoners must work have been frequently noted by the Circuit, as well as the previous opinions in this action. However special solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wilful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights. The defendants' motion is granted, and McDonald's case is dismissed.

IT IS SO ORDERED.