Miriam BEN–SHALOM, Petitioner,

v.

SECRETARY OF the ARMY, et
al., Respondents.

Appeal No. 86–984.

United States Court of Appeals,
Federal Circuit.

Dec. 18, 1986.

John C. Hoyle, Dept. of Justice, Washington, D.C., argued for respondents. With him on the brief were Richard K. Willard, Asst. Atty. Gen., Joseph P. Stadtmueller, U.S. Atty. and Anthony J. Steinmeyer. Lt. Colonel William C. Kirk and Captain Mark Landes, Office of the Judge Advocate Gen., Dept. of the Army, Washington, D.C., of counsel.

Patrick T. Berigan (argued), Angermeier & Rogers, Milwaukee, Wis., for petitioner.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and ARCHER, Circuit Judge.

SKELTON, Senior Circuit Judge.

Petitioner, Miriam ben-Shalom, brought suit for a writ of mandamus against respondents, Clifford Alexander, the Secretary of the Army, or his successor; and Commanding Officer, United States Army, Headquarters, Third Battalion, 351st Regiment, Fourth Brigade, 84th Division (the Army), seeking to compel them to reinstate her as a member of the United States Army Reserves. Ms. ben-Shalom had been honorably discharged from the Army because she had stated on several occasions that she was a homosexual, although there was no evidence that she had actually ever engaged in a homosexual act.

The district court granted the request of petitioner and issued the writ of mandamus on the ground that the action of the Army and the regulation on which it acted violated petitioner's rights of free speech, due process, and personal privacy contained in the First, Fifth and Ninth Amendments to the Constitution. The court ordered the

Army to physically reinstate petitioner to her former position. The Army did not appeal from that order.

A detailed account of additional facts and prior proceedings in the case is set forth in the Army's brief, which is substantially as follows.

*Facts.* Petitioner Miriam ben-Shalom enlisted in the Army for a three-year period of Reserve duty in November 1974. At various times during her enlistment, ben-Shalom publicly acknowledged that she was homosexual. At a hearing in September 1976, testimony was adduced that she had publicly acknowledged her homosexuality during conversations with fellow reservists, in an interview with a reporter for her division newspaper, and in class, while teaching drill sergeant candidates.

In December 1975, ben-Shalom was informed that she was being considered for discharge from the Reserves for engaging in homosexual activities. Later, in June 1976, the Army revised its allegations to process ben-Shalom under a section of the then-existing Army regulations that permitted discharge of any soldier who "evidences homosexual tendencies, desire, or interest, but who is without overt homosexual acts." Ch. 7–5b(6), A.R. 135–178 (1977).[1] At her request, ben-Shalom was given a hearing before a board of officers. After taking evidence, the board recommended that ben-Shalom be given an honorable discharge from the Service as "unsuitable" because of her admitted homosexuality. Ben-Shalom wrote to the Commander, Fifth Army, requesting that he reject the board's recommendation and retain her in the Reserves. On December 1, 1976, she was notified that her request had been denied and that she was honorably discharged, effective that date.

*Prior Proceedings.* Ben-Shalom brought suit in district court for the Eastern District of Wisconsin, alleging that her discharge violated the First, Fifth, and Ninth Amendments to the Constitution. On May 20, 1980, the district court granted her motion for summary judgment, finding that her discharge violated her rights of free speech, privacy, and substantive due process because the regulations then in effect were overbroad. Based on those findings, the court issued a writ of mandamus on the same date directing that "the Department of the Army shall reinstate [ben-Shalom] as a member of the army reserves with all duties, responsibilities and privileges earned by her prior to her discharge."

After filing a notice of appeal and obtaining a stay of the district court's order, the Secretary voluntarily dismissed the appeal, and the district court's order became final on November 24, 1980. As a result of the district court's order, the Army changed ben-Shalom's military records to reflect an honorable discharge due to the expiration of her term of enlistment on November 11, 1977. The Army also offered to pay ben-Shalom backpay for the eleven months that were remaining on her enlistment at the time of her original discharge. Moreover, ben-Shalom's trial attorney advised the United States Attorney that ben-Shalom no longer desired to return to the Army and would consider a monetary settlement. Thereafter, the parties engaged in settlement negotiations, primarily over the amount of the monetary offer. In March or April 1982, the Army extended its last offer to ben-Shalom of $1,704.84.[2]

1. As a result of the district court's 1980 order in this case, the Department of Defense issued new directives in January 1981 governing the discharge of homosexuals. These directives provide, in part: "a member shall be separated ... if ... [t]he member has stated that he or she is a homosexual ... unless there is a further finding that the member is not a homosexual...." The directive defines a homosexual as "a person, regardless of sex, who engages in, desires to engage in, or intends to engage in homosexual acts."

2. The Army had earlier offered ben-Shalom $991.16, but increased its offer to $1,704.84 after ben-Shalom claimed that she would have been promoted prior to the expiration of her enlistment contract had she not been prematurely discharged. The increased amount reflects additional backpay that ben-Shalom would have received if she had received the promotion.

The matter was left unclear until September 1983, when ben-Shalom filed a motion for contempt in the district court alleging that the Army had not complied with the court's reinstatement order and seeking sanctions against the Secretary. On June 6, 1984, the district court, after holding a hearing, denied ben-Shalom's motion for contempt and ordered that the Army pay her $991.16 in backpay for the eleven-month period that was remaining on her enlistment when she was discharged.

Ben-Shalom appealed the June 6, 1984, order to the Court of Appeals for the Seventh Circuit. In an unpublished order dated September 9, 1985, the Seventh Circuit affirmed in part and vacated in part. 776 F.2d 1049. The court of appeals affirmed the district court's denial of ben-Shalom's motion to hold the Secretary in contempt, stating that throughout the negotiations the Secretary "understandably believed that ben-Shalom was not requiring compliance with the district court's reinstatement order.... Under these circumstances we conclude that ben-Shalom failed to establish by clear and convincing evidence that respondents' conduct was contumacious."

The court of appeals, however, vacated the district court order awarding ben-Shalom $991.16 in backpay. The appellate court viewed the monetary award as reopening the district court's earlier reinstatement order and stated that such reconsideration of the earlier order was not permissible in a civil proceeding for contempt. The court of appeals also set forth the procedure to be followed on its remand to the district court as follows:

> To the extent ben-Shalom still insists upon compliance with the district court's reinstatement order, she may appropriately request the [district] court's help in the enforcement of its final judgment pursuant to Fed.R.Civ.P. 70.... On the other hand, if [the Army] believe[s] the court's reinstatement order is incorrect or invalid, the proper course of action is to seek relief from the judgment pursuant to Fed.R.Civ.P. 60(b), not to effect noncompliance.

*The District Court's Decision on Remand.* On remand to the district court, ben-Shalom filed a motion to enforce the court's earlier reinstatement order and also sought an order requiring the Army to pay her "backpay from December 1, 1976, to the date of actual reinstatement at the rate of an E-5, excluding the period from January 6, 1981, to September 22, 1983." The Secretary filed a Rule 60(b) motion seeking an order declaring that the Army had complied with the earlier reinstatement order by correcting ben-Shalom's honorable discharge to eliminate any reference to homosexuality and tendering to her backpay and allowances in the amount of $991.16 for the eleven months remaining on her enlistment when she was discharged, or, in the alternative, to amend the earlier order to delete the reinstatement requirement and instead require the above-stated change in the discharge and payment of backpay and allowances.

On January 28, 1986, the district court denied the Secretary's motion. The court ruled that the motion was "untimely and ... an attempt to relitigate the merits of my [earlier] decision." The court granted ben-Shalom's motion requiring "the Army to reinstate her by March 1, 1986, or be adjudged in contempt." The court denied ben-Shalom's request for backpay from the date of her original discharge to the present (excluding a certain period of time) stating:

> Actions against the military for backpay are subject to the exclusive jurisdiction of the Court of Claims. The Court of Claims has uniformly limited recovery for unlawful discharge to the period between the date of discharge and the date that the enlistment contract would expire.... Moreover, this court lacks jurisdiction to award monetary awards against the government, as such an award is barred by the doctrine of sovereign immunity.

On February 11, 1986, the Secretary filed in the district court a Motion to Alter or Amend Judgment or, in the Alternative, to Stay the Decision and Order of the Court

of January 28, 1986. The district court denied the motion, without opinion, on February 18, 1986. The Secretary filed a notice of appeal to this court on February 21, 1986, and also filed in this court a Motion for a Stay Pending Appeal. By order dated February 28, 1986, this court granted the Secretary's stay motion and ordered that "the decision of the district court dated January 28, 1986, is stayed until further order of the court."

*Decision.* At the outset we are confronted with a jurisdictional question of whether or not we have jurisdiction of this appeal. The case arose in the Eastern District of Wisconsin, which is located in an area over which the Court of Appeals of the Seventh Circuit exercises appellate jurisdiction. The reinstatement decision and order was issued by the United States District Court for the Eastern District of Wisconsin. The district court found that it had jurisdiction of the case under 28 U.S.C. §§ 1331, 1361 and 1651. The Army contends that the district court had jurisdiction of the case under 28 U.S.C. § 1346(a)(2), known as the Tucker Act. The relevant portions of that statute are as follows:

§ 1346. United States as defendant

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

\*　　\*　　\*　　\*　　\*　　\*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

The Army argues that since petitioner's suit is based at least in part on Section 1346(a)(2), this court has jurisdiction of this appeal under 28 U.S.C. § 1295(a)(2), which provides that this court has "exclusive jurisdiction of an appeal from a final judgment of a district court of the United States, if the jurisdiction of that court was based, in whole or in part on Section 1346 of this title."

On the other hand, petitioner says that jurisdiction of the district court was based on Sections 1331, 1361 and 1651, as the court found (which was not appealed), and not on Section 1346, and that since no part of the district court's jurisdiction was based on Section 1346(a)(2) it is not relevant, and accordingly Section 1295(a)(2) does not confer jurisdiction on this court.

These conflicting arguments require us to determine the meaning and applicability of Section 1346(a)(2) (The Tucker Act). In *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court held that the Tucker Act (28 U.S.C. § 1491) enacted in 1877 did not expand the jurisdiction of the Court of Claims (one of our predecessor courts) to equitable matters but limited that jurisdiction to "actual, presently due money damages from the United States." It held further that the Tucker Act is itself only a jurisdictional statute and does not create any substantive right enforceable against the United States for money damages. In order for a district court to have jurisdiction of an action under § 1346(a)(2) to enforce a substantive right against the United States for the collection of money damages, the basis of that right must be a provision in a different statute, the Constitution, a regulation, or a contract that can fairly be interpreted as mandating compensation by the federal government. In this connection the Court said:

[T]he respondents and the amici make two observations. They first argue that the Tucker Act fundamentally waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation, and

makes available any and all generally accepted and important forms of redress, including money damages. It is said that the Government has confused two very different issues, namely, whether there has been a waiver of sovereignty, and whether a substantive right has been created, and it is claimed that where there has been a violation of a substantive right, the Tucker Act waives sovereign immunity as to all measures necessary to redress that violation.

The argument does not persuade us. As stated above, the Tucker Act is merely jurisdictional, and grant of a right of action must be made with specificity. The respondents do not rest their claims upon a contract; neither do they seek the return of money paid by them to the Government. It follows that the asserted entitlement to money damages depends upon whether any federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. [599] at 607, 372 F.2d [1002] at 1009 [ (1967) ]; *Mosca v. United States*, 189 Ct.Cl. 283, 290, 417 F.2d 1382, 1386 (1969), cert denied, 399 US 911, 26 L.Ed.2d 565, 90 S.Ct. 2197 (1970).

*United States v. Testan*, 424 U.S. at 400, 96 S.Ct. at 954.

The Court added further:

Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1008, 1009.

*United States v. Testan*, 424 U.S. at 401–402, 96 S.Ct. at 955.

The court also held that the passage of the Tucker Act in 1887 did not expand the jurisdiction of the Court of Claims to equitable matters. The same rule applies to district courts which presently have concurrent jurisdiction with the Claims Court under the Tucker Act (§ 1346). See the Federal Courts Improvement Act, Pub.L. 97–164, 96 Stat. 27, effective October 1, 1982. This Act substituted the Claims Court for, with some modification not here pertinent, the trial division of the Court of Claims.

It is clear from the foregoing authorities that if a suit in a district court is against the Government and is based on the Tucker Act, it must seek money damages and cannot be limited to equitable claims. *See Van Drasek v. Lehman*, 762 F.2d 1065, 1068 (D.C.Cir.1985) where the court held:

[F]or a claim in the District Court to be based on the Tucker Act [28 U.S.C. § 1346], it must (1) seek money (2) not exceeding $10,000 (3) from the United States and (4) be founded either upon a contract or upon a provision of "the Constitution, or any Act of Congress, or any regulation of an executive department," 28 U.S.C. § 1346(a)(2), that "can fairly be interpreted as mandating compensation by the federal government for damages sustained." [cite omitted]. If any of these requirements are not met, the claim falls outside the scope of the Tucker Act....

\*    \*    \*    \*    \*    \*

For reasons not germane to this appeal, the Supreme Court has limited the scope of the Tucker Act to claims for money. *See United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Although consent to suit is necessary for monetary and nonmonetary claims alike, the Tucker Act is not implicated when plaintiff seeks only declaratory and injunctive relief. In *Dronenburg v. Zech*, 741 F.2d 1388 (D.C. Cir.1984), for example, this court heard an appeal of an officer who alleged that the Navy had unconstitutionally discharged him for engaging in homosexual conduct. Dronenburg, like Van Drasek, originally sought reinstatement and money damages. Dronenburg, however,

amended his complaint to eliminate any claim for money, leaving only claims for injunctive and declaratory relief. *Id.* at 1390 n. 2. This court found that 5 U.S.C. § 702 (1982) waived sovereign immunity for Dronenburg's non-monetary claims, thereby permitting suit against the United States in the District Court, under the general federal question statute, 28 U.S.C. § 1331 (1982). Since Dronenburg made no claim for money damages, the jurisdiction of the district court could not have been based on the Tucker Act.

*Van Drasek v. Lehman,* 762 F.2d 1068–1069.

In *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980) Jones had been released from the Army. He sued the Government for actual damages and sought a writ of mandamus to prevent his removal. Later he eliminated his claim for actual damages, but insisted on his request for mandamus. The Fifth Circuit held:

> The Tucker Act is therefore no longer in question because that Act only applies to suits for money damages. *Hunsucker v. Phinney,* 497 F.2d 29, 36 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975).

Many more cases could be cited that hold that the Tucker Act (28 U.S.C. § 1346(a)(2)) confers jurisdiction on district courts of actions against the Government for money damages, but not for equitable relief.[3] The question is well-settled and is no longer open to controversy.

In the instant case, petitioner sued for a reinstatement writ of mandamus, which is an equitable proceeding. She did not ask for money damages in her original complaint and never amended it to ask for that relief. In fact, the district court found specifically that "No money damages are sought." *Ben-Shalom v. Secretary of Army,* 489 F.Supp. 964, 970 (E.D.Wis.1980). This finding was cited with approval by the Court of Appeals for the Seventh Circuit on page 4 of its unpublished order of September 9, 1985, in the prior appeal of this case. There the court said:

Indeed, ben-Shalom's suit sought no monetary damages. *ben-Shalom v. Secretary of the Army,* 489 F.Supp. at 970. Rather, she sought reinstatement in the Army reserves.

*Id.* The Army did not appeal either of these court decisions.

In the Army's Reply Brief, it argues that this court has jurisdiction to determine whether there is a claim based on Section 1346 in this case, because the complaint implicitly sought backpay as a part of the remedy for her illegal discharge. We do not agree. Such a theory would be contrary to the authorities cited above. Furthermore, it would require the Government's sovereign immunity from suit to be waived by implication. This would be contrary to law as stated by the Supreme Court in *United States v. Testan, supra,* as follows:

> It long has been established, of course, that the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 US, [584] at 586, 85 L.Ed. 1058, 61 S.Ct. 767 [at 769]. And it has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 US, at 4, 23 L.Ed.2d 52, 89 S.Ct. 1501 [at 1503]; *Soriano v. United States,* 352 US 270, 276, 1 L.Ed.2d 306, 77 S.Ct. 269 (1957). Thus, except as Congress has consented to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood,* 312 US, at 587–588, 85 L.Ed. 1058, 61 S.Ct. 767 [at 770–71].

*United States v. Testan,* 424 U.S. at 399, 96 S.Ct. at 953–954; *Cf. United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983).

---

**3.** A number of these cases are listed in notes 24 and 25 of the 1985 cumulative annual pocket part of U.S.C.A. relating to Title 28 U.S.C. § 1346.

. After having carefully reviewed the record, the briefs, and argument of counsel, we hold that petitioner sued the Army in the district court for the equitable relief of a reinstatement writ of mandamus, but did not include in her suit a claim for money damages; that, accordingly, the jurisdiction of that court was based on 28 U.S.C. §§ 1331, 1361, and 1651 and was not based in whole or in part on 28 U.S.C. § 1346 as required by 28 U.S.C. § 1295(a)(2) in order for this court to have jurisdiction of this appeal; that, consequently, we do not have jurisdiction to decide the appeal on the merits; and that the Court of Appeals for the Seventh Circuit has the necessary jurisdiction to decide the case, and it should be transferred to that court. We have not considered nor decided the case on the merits because of our lack of jurisdiction.

We transfer the case to the Court of Appeals for the Seventh Circuit pursuant to 28 U.S.C. § 1631. The stay granted by this court on February 28, 1986, on the order of the district court dated January 28, 1986, pending appeal and until further order of this court, will be lifted and no longer effective when the transfer is completed.

*So ordered.*

Friedman, Circuit Judge, filed dissenting opinion.