Joseph C. STEFFAN, Plaintiff,

v.

Richard CHENEY, et al., Defendants.

Civ. A. No. 88–3669–OG.

United States District Court,
District of Columbia.

July 21, 1989.

See also 733 F.Supp. 121.

Marc Wolinsky, Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff.

Kenneth Kohl, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before the Court on defendants' motion to dismiss. Defendants are the Secretary of Defense, the Secretary of the Navy, the Superintendent of the Naval Academy, and the Commandant of Midshipmen. Plaintiff Joseph C. Steffan was formerly a midshipman at the United States Naval Academy. He was separated from the Naval Academy when he admitted that he was a homosexual. Plaintiff complains that his separation from the Naval Academy violated his constitutional rights of free speech and association, due process, and

equal protection. Defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that "plaintiff failed to allege any facts which, if proven, would establish that his resignation was involuntary." Defendants' Memorandum at 14. Defendants also seek dismissal under Rule 12(b)(6), arguing that plaintiff voluntarily resigned, depriving this Court of jurisdiction. In addition, defendants contend that this action should be dismissed because plaintiff has failed to exhaust his administrative remedies. Finally, defendants assert that the Tucker Act confers exclusive jurisdiction over this matter on the Claims Court.

■ Defendants' Rule 12(b) arguments essentially challenge plaintiff's standing to sue. Because a motion to dismiss for lack of standing can only be brought under Federal Rule of Civil Procedure 12(b)(1), defendants' 12(b)(6) motion is denied. The 12(b)(1) motion is denied because plaintiff has alleged facts that, if true, establish his standing to sue. The Court also rejects defendants' argument that exhaustion of administrative remedies is required, holding that the futility exception applies. Finally, the Court concludes that the Tucker Act does not apply to this action.

## BACKGROUND

Plaintiff was scheduled to graduate from the Naval Academy in May, 1987. In March, he was advised by another midshipman that the Naval Investigative Service was investigating his alleged homosexuality. Shortly thereafter he told the Chief of Chaplains, Captain Byron Holderby, that he was a homosexual. He asked the Chaplain to intercede with the Commandant on his behalf "to assure his graduation." Complaint at ¶ 17. On March 23, after the Commandant informed the Chaplain that plaintiff would not be allowed to graduate, plaintiff himself met with the Commandant and "requested a meeting with the Superintendent . . . to request permission to graduate." Complaint at ¶ 19. At this meeting plaintiff admitted to the Commandant that he was homosexual. The Commandant refused the request to meet with the Superin-

tendent and arranged to have the Brigade Performance Board convene the next day to consider plaintiff's fitness to serve.

Navy regulations provide that homosexuality "severely limit[s] a midshipman's aptitude and potential for commissioned service." United States Naval Academy Regulations, ¶ 12010.3.4 (rev. 1978). Homosexual midshipmen are considered for separation from the Naval Academy on the basis of their insufficient aptitude. Commandant of Midshipmen Instruction 1610.6f, at ¶ 2.15.3. Thus, the Commandant recommended to the Brigade Performance Board that plaintiff be separated from the Naval Academy.

The Brigade Performance Board met the next day, March 24. Prior to the meeting plaintiff met with the Deputy Commandant of Midshipmen, Captain A.H. Konetzni. Captain Konetzni allegedly "warned [plaintiff] that if [he] wanted things to proceed smoothly, [he] should not answer in any way that would be adversarial to the proceedings. [The Captain] went on to say that if [plaintiff] tried to fight [his] discharge, it would be well within the Academy's power to make [his] situation much more unpleasant than it already was." Affidavit of Joseph C. Steffan. While before the Board, plaintiff was asked, "Do you desire to be commissioned as an officer of the Naval service by continuing as a midshipman of the Naval Academy?", to which he replied, "No, sir." Exhibit K, Defendants' Memorandum.

The Brigade Performance Board recommended to the Commandant that plaintiff be separated from the Naval Academy due to insufficient aptitude for military service. On March 26 the Commandant concurred with the Brigade Performance Board and recommended to the Academic Board that plaintiff be separated. Plaintiff met with the Performance Officer, Major R.C. Funk, to review the Commandant's recommendation. Plaintiff allegedly "informed Major Funk that [he] did desire to graduate from the Academy and wanted that statement included with the Commandant's letter." Steffan Affidavit, ¶ 7. Major Funk instructed plaintiff to make this request to

the Academic Board. On April 1 the Academic Board convened to consider plaintiff's case. At the hearing, plaintiff "was urged to accept a qualified resignation in lieu of discharge." Complaint at ¶ 25. He had previously been "warned that any appeal from the Board's recommendation would be futile." Complaint at ¶ 26. In a brief prepared statement plaintiff asked that he be allowed to graduate. Steffan Affidavit at ¶ 9. The Board recommended that plaintiff be discharged for insufficient aptitude.

That same day, April 1, the Superintendent informed plaintiff, in writing, of the Board's recommendation and that he intended to recommend to the Secretary of the Navy that plaintiff be discharged from the Naval Academy. The written notification provided that plaintiff "may submit to the Secretary of the Navy a written statement concerning" the Superintendent's proposed recommendation of involuntary discharge. Exhibit F, Defendants' Memorandum. The notification also explained that the Superintendent would "grant [plaintiff] the opportunity to submit a qualified resignation to the Secretary of the Navy," in which case the Superintendent would forego submitting his recommendation. *Id.* Plaintiff was instructed to decide, "within twenty-four hours," whether to submit a written statement to the Secretary or his resignation. *Id.*

On April 1, plaintiff signed a Statement of Understanding, prepared by the Navy, indicating that he understood that he had the option "to submit a qualified resignation or to be recommended for discharge." Exhibit G, Defendants' Memorandum. The Performance Officer, Major Funk, again briefed plaintiff on his options. Major Funk allegedly made a number of statements which led plaintiff to believe he had no option but to resign:

> Major Funk urged me to resign. He stated that if I chose to show cause to the Secretary of the Navy, I would be discharged and the repercussions would be extreme.... He repeatedly warned me that the negative aura surrounding an involuntary discharge would adversely affect my selection into another academic program and even my future employment. He added that, if I were discharged, my military discharge certificate would include a code that meant "homosexual" and that if I chose to resign, this code would be omitted.

Steffan Affidavit at ¶ 12.

Plaintiff submitted his qualified resignation to the Naval Academy on April 1. Exhibit H, Defendants' Memorandum. On May 6, 1988, the Assistant Secretary of the Navy accepted plaintiff's resignation. Exhibit I, Defendant's Memorandum. On December 9, 1988, plaintiff wrote the Secretary of the Navy requesting permission to withdraw his resignation. The instant action was filed on December 28, 1988. On February 8, 1989, the Secretary denied plaintiff's request.

## DISCUSSION

### I. *Standing*

Defendants argue that plaintiff's voluntary resignation deprives the Court of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Defendants also contend that the action should be dismissed for failure to state a claim because the complaint does not adequately allege that plaintiff's resignation was involuntary. *See* Fed.R.Civ.P. 12(b)(6). These two bases for dismissal, however, are grounded on the same argument: that plaintiff voluntarily resigned from the Naval Academy. As the Court concludes below, this is actually a challenge to plaintiff's standing.

A motion to dismiss for want of standing must be evaluated as a 12(b)(1) motion. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987) (citing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)). Thus, defendants' citation of Rule 12(b)(6) is misplaced. *C.f. Gregg v. Barrett*, 771 F.2d 539, 547 (D.C.Cir.1985) (Rule 12(b)(6) motion denied if the facts alleged state a claim for relief).

The gravamen of defendants' argument is that the Court lacks subject matter jurisdiction because plaintiff resigned voluntar-

ily. To support their jurisdictional argument, defendants rely on a line of cases holding that the jurisdiction of the United States Claims Court and the Merit Systems Protection Board ("MSPB") is limited to cases involving involuntary resignations. *See Petrick v. United States,* 12 Cl.Ct. 700, 704 (1987); *Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985); *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985); *Covington v. HHS,* 750 F.2d 937, 941–42 (Fed.Cir.1984); *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983) (citing *Taylor v. United States,* 591 F.2d 688, 692, 219 Ct.Cl. 86 (1979). But defendants fail to consider that the jurisdiction of this Court differs considerably from the jurisdiction of the Claims Court and the MSPB. *Compare* 5 C.F.R. § 752.401(c)(3) (no MSPB jurisdiction over "[v]oluntary action initiated by the [civilian] employee") *and Schultz v. Navy,* 810 F.2d 1133, 1136 (Fed.Cir.1987) *and Parker v. United States,* 230 Cl.Ct. 974, 975 (1982) (jurisdictional statute "covers only 'an unjustified or unwarranted personnel action.' A voluntary resignation is not such an act.") *with* 28 U.S.C. §§ 1331, 2201.

■ Unlike the MSPB, this Court is not automatically precluded from considering plaintiff's claim if the resignation was voluntary. This Court has subject matter jurisdiction if the complaint purports to state a nonfrivolous claim under federal law. *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1350.

■ The contention that plaintiff resigned voluntarily actually challenges plaintiff's standing to bring this action.[1] If, as defendants contend, plaintiff resigned voluntarily, defendants arguably did not cause his injury. *See Bois v. Marsh,* 801 F.2d 462, 466 n. 6 (D.C.Cir.1986). However, the test of plaintiff's standing is not necessarily equivalent to the involuntariness standard used to gauge Claims Court and MSPB jurisdiction. For example, there is no reason to employ the test for "involuntariness" rather than that of "constructive discharge" or similar doctrines when considering whether defendants caused plaintiff's injury. *See Bois v. Marsh,* 801 F.2d at 466 n. 5; *Simpson v. Federal Mine Safety & Health Review Comm'n,* 842 F.2d 453, 461 (D.C.Cir.1988) (constructive discharge occurs where a reasonable person "would have felt compelled to resign"); *cf. Burney v. City of Pawtucket,* 559 F.Supp. 1089, 1097 (D.R.I.1983). Although the parties focus exclusively on involuntariness, the effect of plaintiff's resignation should be resolved by traditional Article III analysis:

[Article] III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1925, 48 L.Ed.2d 450] (1976).

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In the instant case, the existence of a legally cognizable injury—Steffan's separation from the Naval Academy—is conceded by defendants. The relief sought—reinstatement and a declaratory judgment—would redress this injury. The issue raised by this motion is whether plaintiff's separation was caused by the defendants.

As a preliminary matter, the Court takes note of the quantum of evidence plaintiff

---

**1.** Defendants suggest that plaintiff's voluntary resignation makes this action moot. But the cases relied on by defendants are inapposite. *See Bois v. Marsh,* 801 F.2d 462, 466 (D.C.Cir. 1986) (plaintiff "asserted no intention of re-

turning to active duty"); *Ringgold v. United States,* 553 F.2d 309, 310 (2d Cir.1977) (plaintiff resigned voluntarily while case was before appeals court). Steffan seeks reinstatement.

must adduce to defeat a motion to dismiss for lack of standing:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.

*Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (citation omitted).

More recently, in *Haase v. Sessions*, the D.C. Circuit explained how the court should weigh the evidence when deciding a Rule 12(b)(1) motion challenging standing:

> As a general matter, a plaintiff's standing to pursue a claim rests on the theory of injury presented in the complaint and the facts alleged in support of the claim. If the claim is logically defective in some manner, the court is obliged to dismiss the action and to do so no matter when the defect is brought to the court's attention. To the extent the assessment turns on factual evidence, the court may consider all matters developed in the record at the time of its decision. At this stage, however, the plaintiff is protected from an evidentiary attack on his asserted theory by the defendant, just as the defendant is protected from compulsory discovery. This is the meaning of the many Supreme Court decisions emphasizing that the standing inquiry turns on the allegations in the complaint. *See, e.g., Warth [v. Seldin]*, 422 U.S. at 500–01, 95 S.Ct. at 2206. Directed discovery cannot be allowed when the focus is on the logical sufficiency of the complaint. The plaintiff is the beneficiary of this rule as he can freely augment his pleadings with affidavits, while the defendant is barred *at this stage of the proceedings* from attacking the claims made therein. Assuming the theory presented in the complaint is not itself inherently flawed, the

standing inquiry is ordinarily now complete.

*Haase v. Sessions*, 835 F.2d at 907 (emphasis in original).

In this case, plaintiff's pleadings establish that he has standing to sue. The first paragraph of plaintiff's complaint alleges that the defendants "caused plaintiff to be separated, against his will, from the United States Naval Academy." Complaint ¶ 1. The balance of the complaint, as well as plaintiff's affidavit, sets forth facts which make clear that plaintiff would not have left the Naval Academy if not for the regulations barring homosexuals. In sum, plaintiff has pled sufficient facts to defeat a motion to dismiss for want of standing.

## II. *Exhaustion of Administrative Remedies*

■ Defendants argue that even if the allegations are sufficient to support a claim of involuntariness, the action should be dismissed pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies. The mechanism for the administrative remedy in this instance is the Board for Correction of Naval Records ("BCNR"). The BCNR is empowered to "correct any military record when ... necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). Defendants contend that if the BCNR found that the resignation was involuntary, "then the BCNR will afford plaintiff complete relief by reinstating him back into the Academy." Defendants' Reply at 30. Plaintiff contends that the BCNR cannot afford him any meaningful relief and that any appeal to that body would be futile.

The BCNR is not empowered to change the Naval regulations excluding homosexuals. *See* 32 C.F.R. § 723.6–723.7. Except in certain limited circumstances, the BCNR is not authorized to take any action except to forward the record of its proceedings to the Secretary of the Navy. *Id.* Upon receipt of the record, the Secretary "will direct such action in each case as he determines to be appropriate." 32 C.F.R. § 723.7. Thus, even if the BCNR were persuaded that plaintiff's resignation was

involuntary, only the Secretary of the Navy could reinstate him. More importantly, once reinstated, plaintiff would again be asked to resign or face discharge since the regulations giving rise to this action remain in effect. Although the BCNR may consider constitutional claims, *see* 32 C.F.R. § 723.3(5), it does not have the authority to change existing regulations or exempt plaintiff from those regulations. In sum, the BCNR does not have the power to grant adequate relief in this case.

Plaintiff also contends that it would be futile to seek administrative relief in this case. It is well settled that a plaintiff is excused from the requirement that he exhaust his administrative remedies where the agency has plainly announced its policy and its unwillingness to alter that policy. *James v. HHS*, 824 F.2d 1132 (D.C.Cir. 1987); *Etelson v. Office of Personnel Management*, 684 F.2d 918 (D.C.Cir.1982). In the instant case, the Navy has frankly stated that the regulations require the discharge or resignation of homosexuals and that there are no exceptions: "Officers who admit that they fit within the Navy's regulatory definition of homosexual are inevitably discharged.... The regulation requires discharge in all cases." Defendants' Reply at 21 n. 8. As noted, if the BCNR recommended that the plaintiff be reinstated in the Academy, plaintiff would undoubtedly be brought before the two performance boards and required to either resign or be discharged. He could then appeal to the Secretary and oppose his separation. But defendants make it clear that any such effort would be futile: "requests for retention by servicemembers who openly admit their homosexuality are 'undoubtedly' unsuccessful." Defendants' Reply at 21. *See generally Beller v. Mittendorf*, 632 F.2d 788, 801 (9th Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). Consequently, the Court holds that plaintiff is not required to exhaust his administrative remedies because such an attempt would be futile.

### III. *The Tucker Act*

■ Defendants argue that the Claims Court has exclusive jurisdiction over this action because the amount of plaintiff's back pay award may exceed $10,000. Under the Tucker Act, the district courts and the Claims Court have concurrent jurisdiction over actions by military personnel where the amount in controversy is less than $10,000. 28 U.S.C. § 1346. If the back pay award exceeds $10,000, the Claims Court has exclusive jurisdiction. *Id.* § 1491; *Van Drasek v. Lehman*, 762 F.2d 1065, 1069 (D.C.Cir.1985)

In his complaint, plaintiff cited three bases for the Court's jurisdiction: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (Tucker Act) and 28 U.S.C. § 2201 (declaratory judgment). The complaint makes no reference to back pay or a monetary award. In his opposition, plaintiff's only response to defendants' suggestion that jurisdiction lies in the Claims Court was to note that he seeks no award of back pay. In their reply, defendants contend that even though plaintiff did not request back pay, he is nonetheless entitled to it if successful in this action.

An examination of the case law reveals that the government's contention that an implicit claim for back pay in excess of $10,000 confers exclusive jurisdiction on the Claims Court is unwarranted. Both the D.C. Circuit and the Federal Circuit have, after thorough analysis, explicitly rejected defendants' argument. *See Vietnam Veterans v. Secretary of the Navy*, 843 F.2d 528, 533–35 (D.C.Cir.1988); *Wolfe v. Marsh*, 846 F.2d 782, 783 (D.C.Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988); *Ben–Shalom v. Secretary of the Army*, 807 F.2d 982, 987 (Fed. Cir.1986).[2] Thus, the Tucker Act does not

---

**2.** Moreover, the D.C. Circuit has held that if a plaintiff waives recovery in excess of $10,000, the district court retains jurisdiction. *Stone v. United States*, 683 F.2d 449, 452 (D.C.Cir.1982); *VanderMolen v. Stetson*, 571 F.2d 617 (D.C.Cir. 1977). The waiver need not appear in the initial complaint but may be made at a later stage in the proceedings. *Heisig v. Secretary of the Army*, 554 F.Supp. 623 (D.D.C.1982), *aff'd*, 719 F.2d 1153 (Fed.Cir.1983). At oral argument, plaintiff's counsel characterized this action as seeking only declaratory and equitable relief.

apply to this action because plaintiff is not seeking money damages.

## CONCLUSION

Plaintiff has standing to maintain this action. He is not required to seek an administrative remedy from the BCNR because such an action would be futile. Finally, the Tucker Act does not apply to this action because no money damages are sought. The Court expresses no opinion today on the ultimate issue in this case, the lawfulness of the Navy's regulations. That question will be resolved on cross-motions for summary judgment.

## ORDER

Upon consideration of defendants' motion to dismiss, plaintiff's opposition thereto, the argument of counsel in open court, and for the reasons stated in the accompanying Memorandum, it is by the Court, this 20th day of July, 1989

ORDERED that defendants' motion to dismiss be, and hereby is, denied; and it is further

ORDERED that the parties shall submit for the Court's consideration a briefing schedule for summary judgment motions.

Transcript at 44–45. Plaintiff concedes that he "seeks no money damages." Plaintiff's Opposition Memorandum at 23.