A fundamental component to a retaliation claim is the employee's engagement in a protected activity. See United States ex rel. Yesudian v. Howard Univ. , 153 F.3d 731, 736 (D.C. Cir. 1998) (explaining that a retaliation claim requires an employee to show that she engaged in protected activity and that her employer discriminated against her because of that activity). When the employee's claimed protected activity is within her regular responsibilities or duties, the employee must sufficiently explain how the claimed protected activity falls outside the scope of her regular work activity. See United States v. Martin-Baker Aircraft Co. , 389 F.3d 1251, 1261 (D.C. Cir. 2004). Dr. Singletary has not sufficiently pleaded that she engaged in a protected activity.
Dr. Singletary's role at the University was to maintain the care and custody of all laboratory animals at the medical school. Am. Compl. ¶ 9. This included complying with federal statutes and regulations governing animal research activity. Id. ¶ 11. Dr. Singletary alleges that her internal reports to superiors about improving the animals' living conditions, and her later complaint to the NIH, constituted activities protected by the FCA's anti-retaliation provision. Id. ¶ 13; Mem. of P. & A. in Opp. to Mot. to Dismiss ("Pl.'s Opp.") 12, ECF No. 11. But she fails to allege that either her internal reports to supervisors or her complaint to NIH were extraordinary to her regular responsibilities at the University. See United States ex rel. Ramseyer v. Century Healthcare Corp. , 90 F.3d 1514, 1523 (10th Cir. 1996) (affirming the dismissal of a FCA retaliatory discharge claim because the plaintiff was not engaged in protected activity when "the monitoring and reporting activities described in plaintiff's complaint were exactly those activities plaintiff was required to undertake in fulfillment of her job duties"); see also Yesudian , 153 F.3d at 743 ("Merely grumbling to the employer about ... regulatory violations does not ... constitute protected activity in the first place.").
As Dr. Singletary herself admits, her role at the University was to "bring the institution into compliance" with applicable federal regulations. Am. Compl. ¶ 13. The only information alleged in her Amended Complaint about reporting her concern to the University is the brief mention that she "informed her superiors" that the animals' living conditions must be improved. Id. She later repeats that she "raised concerns, complaints and questions." Id. ¶ 29. These sparse allegations-without further detail of who she informed or what she said-do not adequately show that her alleged actions were beyond the scope of her regular work responsibilities. See *335 Frett v. Howard Univ. , 24 F.Supp.3d 76, 87 (D.D.C. 2014) (holding that a plaintiff's report to an auditor about deficiencies and risks was within the terms of his employment). Rather, the reasonable factual inference one draws from these cursory statements is that she was acting in her role as the caretaker of the laboratory animals. Without more, Dr. Singletary's alleged action of informing or updating her supervisors of items within her job responsibility does not sufficiently plead that she engaged in a protected activity. Thus, Dr. Singletary's FCA claim fails state a claim.[2]
Furthermore, though the analysis above is enough to warrant dismissal of Dr. Singletary's FCA claim, Federal Rule of Civil Procedure 9(b) requires any allegations of fraud or mistake to be "state[d] with particularity." Because the FCA is "self-evidently an anti-fraud statute," all complaints must comply with Rule 9(b). United States ex rel. Totten v. Bombardier Corp. , 286 F.3d 542, 552-51 (D.C. Cir. 2002). A plaintiff must "provide the who, what, when, where, and how" about the fraudulent circumstances. Anderson v. USAA Cas. Ins. Co. , 221 F.R.D. 250, 253 (D.D.C. 2004) (internal quotation marks omitted). The Amended Complaint does not state with particularity the circumstances of the University's allegedly false claims. Other than claiming that the University made "representations and warranties" about the conditions in which the laboratory animals lived, the Amended Complaint lacks detail about who made these statements, when these statements were made, what the University certified to, and why these statements were false when they were allegedly made. See Am. Compl. ¶ 26.
B.
The University argues that Dr. Singletary's claims for wrongful termination and breach of contract must be dismissed under Rule 12(b)(6) because she voluntarily resigned. Mot. to Dismiss 11-12. Because both of her claims are based on the allegation that she was wrongfully terminated, Am. Compl. ¶¶ 18-19, 21, the University's argument is more properly construed as a challenge to her standing. See Steffan v. Cheney , 733 F.Supp. 115, 117-19 (D.D.C. 1989) (finding that whether the plaintiff voluntarily resigned was a question of standing to be resolved by reviewing the plaintiff's pleadings). Dr. Singletary's claims must be dismissed because she has not pleaded facts sufficient to show that her allegation of wrongful termination is facially plausible. See Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. As a result, she has not carried her burden to prove that this Court has subject matter jurisdiction over these claims.
*336 To establish a case or controversy under Article III, a plaintiff must show the "irreducible constitutional minimum" of an actual or threatened injury, among other requirements. Lujan , 504 U.S. at 560, 112 S.Ct. 2130. Dr. Singletary alleges that she was "given notice by [the University] ... that her employment would be terminated," and that her termination was "without cause." Am. Compl. ¶¶ 18, 21. She does not, however, allege any factual detail about who gave her the alleged termination notice, the format of the alleged communication, or any effective date of the termination. Indeed, the phrasing of Dr. Singletary's allegation-that her employment "would be terminated"-implies that the University, at most, evidenced the possibility of termination at a future date. See id. ¶ 18 (emphasis added). Her Amended Complaint contains no other nonconclusory factual allegation that the University subsequently made any other statements or acts in furtherance of its supposed intention, or any other information from which this Court can conclude that Dr. Singletary met her burden to establish subject matter jurisdiction.
To counter Dr. Singletary's assertion that she was terminated "in June of 2014 without cause," Am. Compl. ¶ 21, the University provides a few documents. See Coalition for Underground Expansion v. Mineta , 333 F.3d at 198 ("where necessary [to evaluate subject matter jurisdiction], the court may consider the complaint supplemented by undisputed facts evidenced in the record"). First, the University provides a letter from Dr. Singletary to the Dean of the College of Medicine, dated August 7, 2014, wherein she writes, "I would like to inform you that I am resigning from my position as Director Veterinary Services for the College of Medicine and University Veterinarian, Howard University effective August 25th, 2014." Mot. to Dismiss Ex. 1. Second, the University offers Dr. Singletary's pay statements for the period between June 1, 2014 and September 6, 2014. Id. Ex. 2. Dr. Singletary has not challenged the validity of any of these documents; in fact, she admits that she "did submit a resignation letter" in August 2014. See Pl.'s Opp. 1; id. Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. These unrefuted documents indicate that-contrary to her allegation that she was terminated in June 2014-she was employed by the University for several months after her alleged termination, received wages during that period, resigned in August 2014, and resigned voluntarily.
In response to the University's challenge, Dr. Singletary admits that "while she did submit a resignation letter, she was given no choice but to resign or be terminated." Pl.'s Opp. 1; id. Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. She likens her case to Steffan v. Cheney , where a Naval Academy midshipman submitted a resignation letter but the court found that he had sufficiently alleged an Article III injury. 733 F.Supp. at 117-19. There, the court found that the midshipman was "separated, against his will" for admitting that he was a homosexual and because he alleged that his performance officer "repeatedly warned [him] that the negative aura surrounding an involuntary discharge would adversely affect [him] ... He added that, if I were discharged, my military discharge certificate would include a code that meant 'homosexual' and that if I chose to resign, this code would be omitted." Id. at 116-17.[3]
Neither Dr. Singletary's pleading nor affidavit alleges any facts to show *337 that she resigned under duress or was constructively discharged. See Simpson v. Fed. Mine Safety & Health Review Comm'n , 842 F.2d 453, 461 (D.C. Cir. 1988) (holding constructive discharge occurs where a reasonable person "would have felt compelled to resign"). Dr. Singletary merely alleges that she "was given notice ... that her employment would be terminated," Am. Compl. ¶ 18, and that she resigned to take the "prudent course of action ... to proceed with available employment [elsewhere] and resign." Pl.'s Opp. Ex. 1 (Decl. of Sylvia Singletary) ¶ 15. Though she characterizes it as "an involuntary termination," she provides no additional detail about the circumstances that made it legally involuntary, other than her belief that it was. See Stevens v. Sodexo, Inc. , 846 F.Supp.2d 119, 125 (D.D.C. 2012) (reasoning that the plaintiff must plead more than mere words stating that he was a "contract full-time employee"). This conclusory allegation falls well short of the type of conduct and detail alleged in Steffan , where the plaintiff was a student, was subject to and disciplined under the military's hierarchical system, and resigned because Naval Academy regulations required that homosexual students be separated from the school. 733 F.Supp. at 115, 119. Dr. Singletary has not adequately pleaded facts to show constructive termination, and without it, she has not met her burden to establish that she was either injured or that injury was imminent. See Lujan , 504 U.S. at 560, 112 S.Ct. 2130. This deficiency requires that Dr. Singletary's wrongful termination and breach of contract claims be dismissed for lack of subject matter jurisdiction.[4]
IV.
For these reasons, the University's motion to dismiss will be granted and the Amended Complaint will be dismissed without prejudice. A separate order will issue.

To support its motion, the University submitted a letter from the NIH in response to a Freedom of Information Act request the University made for "[a]ll emails, letters, correspondence, reports and/or formal complaints (and any supporting documents), filed in or around April 15, 2014, by Sylvia Singletary with NIH's Office of Laboratory Animal Welfare." Not. of Governmental R. as Supp. Ex. 3, at 11, ECF No. 14-1. The NIH identified an email sent by Sylvia Singletary to NIH, the entirety of which reads, "At 10:45 am, April 15, 2014. I found 21 mice dead from heat exhaustion. Room number [redacted] which houses animals on a IVC lost power over night. In addition, we have been having difficulty with receiving condition [sic ] air in the facility. A more detailed report will be submitted after I have briefed the IACUC and IO." Id. Although I need not consider this letter in making my determination as described above, this document reinforces the inference that Dr. Singletary acted within the regular scope of her responsibilities in making a report to the NIH. This apparently routine incident report to the NIH, which ultimately resulted in a cursory response from the NIH finding that no action would be taken by the Government, id. at 4, is a far cry from the grist of the FCA allegation.

At the time, Naval Academy regulations required that homosexual midshipmen be considered for separation. Id. at 116.

Though standing is dispositive for Dr. Singletary's claims, if this Court had subject matter jurisdiction, Dr. Singletary's wrongful termination and breach of contract claims would likely fail under Rule 12(b)(6) as well.
The District of Columbia has a "very narrow" exception to the general rule that at-will employees may be discharged "at any time, for any reason, or for no reason at all" if the employee was discharged only because she refused to violate the law. Adams v. George W. Cochran & Co. , 597 A.2d 28, 30, 34 (D.C. 1991). To start, Dr. Singletary alleges that she was not an at-will employee and that she had an employment contract with the University. Am. Compl. ¶ 20. And she has not alleged sufficient facts to plead a facially plausible case that she was discharged for refusing to violate the law or a public policy "firmly anchored either in the Constitution or in a statute or regulation." See Herron v. Fannie Mae , 861 F.3d 160, 171 (D.C. Cir. 2017).
As for her breach of contract claim, the Amended Complaint fails to provide non-conclusory details of the alleged contract between Dr. Singletary and the University, the provisions or language that she claims was breached, and the circumstances of the University's alleged breach. The mere allegation that the University "terminat[ed] her employment in June of 2014 without cause" is a "naked assertion devoid of further factual enhancement." Ashcroft v. Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted).