Richard N. WHITE, Appellant

v.

SECRETARY OF THE ARMY.

No. 88–5078.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 27, 1989.

Decided July 7, 1989.

Barton F. Stichman, for appellant.

G. Paul Bollwerk, III, Sp. Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by District Judge HAROLD H. GREENE.

HAROLD H. GREENE, District Judge:

The issue in this case is whether a member of the military service may be separated by means of an undesirable discharge on the basis of his past bad record and his future prospects for wrongdoing, even though the court martial he was facing at the time had no authority to impose such a discharge, and his own request for the discharge was based on erroneous advice by his appointed military counsel. The District Court upheld the Army's action. We reverse.

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

## I

Appellant White joined the Army on March 20, 1972 for a two-year enlistment. Although he completed basic training with excellent ratings, he subsequently committed a substantial number of infractions: in a sixteen-month period, he was absent without leave (AWOL) eight times, for a total of 205 days, and during the same period he was twice tried and convicted by courts martial. Appellant was facing his third court martial—a special court martial for yet another AWOL—when he requested that he be given instead a discharge for the good of the service.[1] On July 20, 1973, in response to that request, appellant received an undesirable discharge, the least favorable of the administrative (non-court martial) discharges.[2] It subsequently came to light that appellant had made the request for his discharge based upon advice from his military counsel who told him that, if he were court martialled, he would undoubtedly receive a dishonorable or a bad conduct discharge. That advice was erroneous; appellant could not have been discharged at all by the special court martial. *See* Part III, *infra.*

Upon learning that he had acted upon erroneous advice, appellant applied to the Army Discharge Review Board (DRB) for an upgrade of his discharge. The DRB found that the attorney's advice, while erroneous, was not prejudicial. In this regard, the Board reasoned that "the final results would have been the same ... [for appellant] would have been discharged under other than Honorable conditions for frequent incidents [of a discreditable nature] based on [his] established pattern of misconduct." Appellant sought review of this decision from the Board for Correction of Military Records (BCMR) which concluded that the advice was not erroneous, much less prejudicial, and denied relief.

The next stop on appellant's odyssey was the District Court,[3] upon the claim that the decisions of the DRB and the BCMR were arbitrary and capricious. The District Court agreed and, upon cross motions for summary judgment, it remanded the matter to the BCMR for a determination as to whether the error was prejudicial. On remand, the BCMR concluded that the error was not harmful because, following another trial for AWOL, appellant

> could expect no less than another long sentence to confinement, after which he would have been a prime candidate for elimination by discharge under other than honorable conditions.

Appellant again sought review in the District Court, and this time that court concluded that the decision of the BCMR was not arbitrary, capricious, or contrary to law, and it granted the Army's motion for summary judgment. The court reasoned as follows:

> Plaintiff's history of repeated unauthorized leave and punishment were clearly contemplated and raised in what turned out to be plaintiff's last experience with a court martial. The Court is of the opinion that it requires far more speculation to believe that plaintiff would have straightened himself out and conducted himself as a model soldier worthy of an honorable, or even general, discharge than it does to believe that there is substantial doubt that plaintiff would have received other than an undesirable discharge.

It is that decision that is before us now.

## II

There are five types of discharges from the Army: honorable, general, undesirable, bad conduct, and dishonorable. A service member who is separated at the expiration of his or her normal term of service may be given an honorable or a general discharge, regardless of the quality of that service.

---

1. Administrative separation for the good of the service in lieu of court martial is provided for by Chapter 10 of Army Reg. A.R. 635–200.

2. For a description of the various types of discharges available, *see* Part II, *infra.*

3. A prior action filed in 1983 resulted in a dismissal for failure to exhaust administrative remedies. *White v. Secretary of the Army,* 629 F.Supp. 64 (D.D.C.1984).

32 C.F.R. § 41, App. A, Part 1, ¶ A.2. (1988).

Premature separation from the Army can be accomplished either by court martial or through administrative discharge proceedings. A member of the service can be separated by means of a bad conduct or dishonorable discharge only by a court martial. Articles 18 and 19, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 818, 819 (1983). While a regular court martial may issue either of these discharges, a special court martial entirely lacks the power to issue a dishonorable discharge, and it may issue a bad conduct discharge only if a court reporter is present during the proceedings. Article 19, UCMJ, 10 U.S.C. § 819.[4]

Administrative proceedings for premature separation can result in honorable, general,[5] or undesirable discharges.[6] 32 C.F.R. Part 41, App. A.; *Wood v. Secretary of Defense*, 496 F.Supp. 192, 193 n. 1 (D.D.C.1980). Under the Army's regulations, an individual separated for such shortcomings as inaptitude, defective attitudes, apathy, and inability to expend effort constructively will receive an honorable or a general discharge. A.R. 635–200, ¶¶ 13–5b, 13–31b. Only an individual discharged for such offenses as "frequent incidents of a discreditable nature with civil or military authorities," an "established pattern of shirking," "sexual perversion," or "drug abuse" may be administratively given an undesirable discharge. A.R. 635–200, ¶¶ 13–5a., 13–31a.

A discharge characterized as anything other than honorable carries with it both a serious stigma in the form of injury to reputation and loss of employment opportunities, *Bland v. Connally*, 293 F.2d 852, 858 (D.C.Cir.1961), and it may also involve loss of entitlement to federal and state veterans benefits. *See Roelofs v. Secretary of the Air Force*, 628 F.2d 594, 603 and n. 12 (D.C.Cir.1980) (Bazelon, J., concurring). On this basis, the Army has by regulation provided for numerous proce-dural protections with respect to both court martial and administrative discharge proceedings. Of particular relevance to this case are the safeguards that apply in the administrative process: they include notice, a hearing before a board of officers, the right to counsel, the opportunity to present witnesses and to cross examine adverse witnesses, and the opportunity to testify if the service member so chooses. A.R. 635–200, ¶¶ 13–12 through 13–25, 32 C.F.R. Part 41, App. A, Part 3.

### III

The function of the District Court in this case was to determine whether the decision of the BCMR was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Wolfe v. Marsh*, 835 F.2d 354, 358–59 (D.C.Cir.1987), cert. denied, —— U.S. ——, 109 S.Ct. 366, 102 L.Ed.2d 355 (1988), and it lacked the power to overturn the review board's decision on any other basis. It is with that standard of review in mind that we consider the District Court's decision.

It is not disputed that the special court martial proceeding alone could not have resulted in appellant's discharge: the court martial had no power to direct the issuance of a dishonorable discharge under any circumstances, and it could have imposed a bad conduct discharge only if a court reporter was present at its proceedings. Article 19, UCMJ, 10 U.S.C. § 819. However, in his instruction instituting the court martial to try appellant for his latest AWOL, the commander had specified "No reporter authorized," so that the option of a bad conduct discharge was likewise unavailable.

It is likewise not disputed that, on this basis, the advice appellant received from his appointed military counsel regarding the possible consequences of the court martial proceeding was in error: appellant did

---

**4.** Special courts martial also have the authority to mete out punishment less severe than discharge.

**5.** A general discharge is sometimes also referred to as a discharge under honorable conditions.

**6.** Since the date of appellant's elimination from the Army, the name "undesirable discharge" has been changed to "discharge under other than honorable conditions."

not face a dishonorable or a bad conduct discharge. Finally, the parties agree that appellant would not have requested the undesirable discharge had he not been given the erroneous advice. Thus, the only question before the Court is whether the conclusion of the BCMR, sustained by the District Court, that the error was not prejudicial because appellant would ultimately have received an undesirable discharge in any event, was arbitrary, capricious, or contrary to law.

The Secretary's position that the BCMR's decision was valid and supported by substantial evidence is undergirded by the following reasoning. Appellant was inexorably heading towards an undesirable discharge. Such an outcome was amply justified by appellant's two court martial convictions, the eight AWOL incidents during his career, and his inevitable conviction by the third court martial for his most recent AWOL. The accumulation of these incidents would have been amply sufficient to warrant the imposition of an undesirable discharge for "frequent incidents of a discreditable nature," following an administrative discharge proceeding which could have been initiated in the wake of the final court martial. Accordingly, so the Secretary reasons, the erroneous advice given to appellant by his counsel was not prejudicial to him.

The difficulty with that line of reasoning is that no administrative discharge proceeding was ever initiated. Thus, the issue before us is further narrowed to the question whether in determining whether or not a legal error is prejudicial, an Army review board may consider a discharge proceeding other than the one that actually took place, and assume the result that would have materialized at the conclusion of the assumed proceeding.

The answer is supplied by our decision in *Giles v. Secretary of the Army*, 627 F.2d 554 (D.C.Cir.1980). That case involved an Army challenge to a decision by the District Court granting blanket upgrades to former enlisted men who had received general discharges on the unlawful basis of compelled urinalysis tests. The Army agreed that the compelled tests were unlawful, but it maintained that soldiers seeking upgrades should be required to apply to the DRB, which could then examine their personnel files to determine whether there existed any other reason justifying a general rather than an honorable discharge.

This Court made three basic holdings. First, we rejected the Army's proposal as "grossly unfair because it would allow the Army to belatedly raise charges against a class member even though those charges were never contemplated or raised in the original discharge proceeding." 627 F.2d at 558. Second, we found that to require the soldiers to apply to the DRB, an appellate forum, improperly deprived them of the procedural safeguards available in administrative discharge proceedings. Third, we held that the Army could initiate new administrative proceedings only with respect to those soldiers who were charged in the original proceeding with improper conduct in addition to drug abuse, and then only with the full complement of procedural protections.

At the very least, then, the proceedings in the instant case held before the Army boards were improper in that they were conducted at the appellate level rather than *de novo*, as this Court specified in *Giles*. Appellant was plainly entitled to the trial-type proceedings and protections provided for by 32 C.F.R. Part 41, App. A, part 3. But the broader question is whether *Giles* requires even more—whether under the circumstances of this case the Army should be permitted to justify the undesirable discharge on the basis of conduct for which the appellant was not charged in the proceeding which led to his request for a discharge.

The Secretary contends that *Giles* is inapposite because in this case, unlike in *Giles*, appellant had a record of proven misconduct: appellant went AWOL eight times and he was court martialled twice. There was no need for "searching the files ... to determine whether [the members of] the affected class could have been charged with other misconduct at the time when they were initially separated," 627 F.2d at 559, for the misconduct in appellant's file was clearly established. Further, according to the Secretary, there was here no doubt that appellant would have been con-

victed and punished following the third court-martial proceeding. This combination of factors, it is said, provided a clear basis for the initiation of administrative separation proceedings and for the imposition of an undesirable discharge.[7] It is essentially the Secretary's position that, because appellant's previous misconduct was proven, it was appropriate to rely on it, even after the fact, to justify his undesirable discharge.

In fact, however, *Giles* does not distinguish between proven and unproven misconduct, nor can we now endorse such a distinction. It may well be that the personnel files at issue in *Giles* also contained instances of prior court-martial proceedings or other wrongdoing, but that was there, and it is here, irrelevant. The crux of the matter is that the Army may not retroactively justify an invalidated separation decision by relying on incidents of misconduct that may be found somewhere in a soldier's personnel file but were not charged in the original proceeding itself.

Indeed, the vice inherent in the proposed manner of proceeding is in this case even more serious than that. The Army does not merely seek to rehabilitate an invalid separation decision; rather it seeks to postulate an entirely different proceeding, one that was not even contemplated at the time of appellant's removal. All that was initiated by appellant's commander was a special court martial; no one had considered, much less held, an administrative discharge proceeding. On this basis, the instant case is even more problematic than *Giles* because the Army here never conducted *any* proceeding that could have properly resulted in appellant's discharge. Even if the Army "reactivated" the special court-martial proceeding, that proceeding, by its terms, could not have resulted in appellant's discharge. As for the administrative proceeding, it was never begun.

Finally, contrary to the Secretary's assertions, there is no basis for assuming that such a proceeding would actually have

taken place following appellant's court martial; to the contrary, its initiation seems unlikely. An administrative proceeding of the type postulated by the Secretary would be commenced by the service member's commanding officer. Appellant's commander had apparently decided not to request a discharge in this case, since he referred the case to a special court-martial, with the instruction that no court reporter was required. It does not seem likely that he would have then turned around and instituted an entirely new and burdensome proceeding to discharge appellant administratively. Moreover, even if such an administrative proceeding had been instituted, it would still have been within the discretion of the board members who heard the case to impose a discharge other than an undesirable one. A.R. 635–200, ¶¶ 13–31a.

Undaunted by this possibility, the Secretary argues that the decisions of the Army boards were not arbitrary and capricious because

> even assuming appellant was not discharged after his third court-martial, it strains credibility to assert that while he still had nearly a year and a half to serve before he would be eligible for a general or honorable discharge by completing his enlisted service ... he would not go AWOL a ninth time after which he would receive the same type of discharge, or worse.[8]

That line of argument entirely lacks merit and must squarely be rejected. By parallel reasoning, the Court would uphold the conviction of an accused with a long criminal record who pleads guilty to a crime based on erroneous legal advice, or otherwise in substantial violation of the standards for the entry of pleas of guilty, provided for by Rule 11, Fed.R.Crim.P., on the basis that, if he were released, he would inevitably commit another crime for which he would receive the same sentence or worse. That obviously is not the law.

---

7. The District Court distinguished this case from *Giles* on the ground that appellant, unlike the *Giles* plaintiffs, had requested his discharge. We cannot endorse that distinction because, as the parties agree, the request was based on

erroneous legal advice, and appellant's actions based on that advice must therefore be disregarded.

8. Brief of Appellee at 14.

To recapitulate. In order to conclude, as did the BCMR, that a discharge under less than honorable conditions was inevitable, it had to hypothesize that:

(1) Appellant would have been convicted on the AWOL charge, and, since the court martial could not have discharged him, he would have been returned to active duty;

(2) Appellant's commander would have concluded that rehabilitation efforts were fruitless and initiated an administrative separation proceeding based on the then existing record;

(3) The commander would have chosen to charge appellant with "frequent incidents of a discreditable nature with civil or military authorities" (rather than with "inaptitude" or "apathy" for which an undesirable discharge is not authorized);

(4) Following a trial-type administrative hearing before a board of officers, the board would have found appellant guilty of frequent incidents of a discreditable nature; it would have decided to separate appellant prematurely from the service; and it would have determined that the appropriate level of discharge was undesirable;

(5) Alternatively, appellant would have gone AWOL once again and would have received a dishonorable or bad conduct discharge following a regular court-martial proceeding with a court reporter present.

The Secretary argues that the BCMR's conclusions are "virtually inescapable."[9] But the truly inescapable fact is that appellant could not have been discharged as a result of the proceeding initiated by the Army. Only protracted speculation encompassing proceedings not begun, charges not brought, and offenses not yet committed can render appellant's undesirable discharge "inescapable." It would be difficult to find a more speculative conclusion. Even the Secretary's proper claim to the deference to be accorded by the courts to the BCMR's decision, see *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983), cannot save so anomalous a result.

## IV

That leaves the issue of the proper remedy. Seventeen years have passed[10] since appellant's discharge. There are enormous practical difficulties with the remedy of reinstating appellant and holding an administrative discharge proceeding, not the least of which is that he is now rather old to be recommencing his military service. Appellant has presumably made a life outside the Army, and the Army has spent a good number of years trying to keep him from receiving an upgrade. In light of what has gone before, it is thus impossible to return appellant to the position he occupied prior to his discharge. Since appellant's undesirable discharge is fatally flawed and cannot be sustained, the only remedy available now that is also practical and appropriate is to treat him as if he had completed his full term, and to require that the Army give him either an honorable or a general discharge.

At first glance, this appears to be a windfall for appellant. There were certainly enough instances of misconduct in appellant's record, even without his final AWOL, to justify the initiation of administrative separation proceedings. Likewise, this record might well have supported the issuance, following the appropriate administrative hearing, of an undesirable discharge. However, the Army chose to proceed by special court martial which had no power to effect appellant's premature separation, and this, in turn, led to appellant's mistaken request for an undesirable discharge. The question then is, who should bear the burden of this mistake. As in *Giles*, the answer is that the Army must do so.

## V

The decision below is reversed. The District Court shall remand the case to the Secretary of the Army with instructions to recharacterize appellant's discharge as honorable or general, using the standards applicable to those discharged at the expiration of the normal term of their service.[11]

*So ordered.*

---

**9.** Appellee's Brief at 11.

**10.** Appellant is not responsible for all of the delay. *See* note 3, *supra.*

**11.** *See Carter v. United States*, 213 Ct.Cl. 727 (1977).