**Joseph C. STEFFAN, Plaintiff,**

v.

**Richard CHENEY, Secretary of Defense, et al., Defendants.**

**Civ. A. No. 88–3669–OG.**

United States District Court, District of Columbia.

Nov. 15, 1989.

Transcript at 44–45. Plaintiff concedes that he "seeks no money damages." Plaintiff's Opposition Memorandum at 23.

Marc Wolinsky, Wachtell, Lipton, Rosen & Katz, Sandra J. Lowe, Lambda Legal Defense and Educ. Fund, Inc., New York City, and Calvin Steinmetz, Isicson, Steinmetz & Weinberg, Washington, D.C., for plaintiff.

Vincent M. Garvey and Kenneth C. Kohl, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before the Court on "Defendants' Renewed Motion for Rule 37 Sanctions and For Stay of All Proceedings in this Case Until Plaintiff Obeys this Court's Discovery Order." Defendants filed this motion after plaintiff refused to respond to defendants' deposition questions concerning whether or not plaintiff had engaged in homosexual acts. Defendants ask that plaintiff's suit be dismissed under Rule 37(b). In the alternative, they ask that the Court enter an order establishing as a fact that plaintiff has engaged in homosexual acts. For the reasons that follow, this Court dismisses plaintiff's suit.

## I. BACKGROUND

This is an action for declaratory and injunctive relief brought against the Secretary of Defense, the Secretary of the Navy, the Superintendent of the Naval Academy, and the Commandant of Midshipmen. Plaintiff Joseph Steffan was formerly a midshipman at the United States Naval Academy. He was separated from the Naval Academy when he admitted that he was a homosexual. Plaintiff alleges that his separation violates the constitutional rights of free speech and association, due process, and equal protection. Plaintiff seeks a declaration that the Navy regulations under which he was forced to resign be declared unconstitutional. He also seeks an order requiring defendants to award him his diploma and reinstate him in the service.

On July 21, 1989, 733 F.Supp. 115, this Court denied defendants' motion to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6). The Court ordered the parties to submit a briefing schedule for summary judgment motions to resolve the ultimate issue in this case—the lawfulness of the Navy's regulations. Pursuant to the proposed briefing schedule timely submitted by the parties and approved by the Court, defendants' motion for summary judgment was due September 18, plaintiff's motion for summary judgment was due October 23, defendant's reply brief was due November 20, and plaintiff's reply brief was due December 8.

Prior to submitting its motion for summary judgment, however, defendants sought to depose the plaintiff. On August 22, plaintiff received a notice calling for the deposition of Joseph Steffan on August 30. On that same day (August 22) plaintiff's counsel, Mr. Wolinsky, informed defendants that neither he nor his co-counsel could attend a deposition on August 30. Mr. Wolinsky also protested that defendants were reneging on an agreement reached while negotiating the briefing schedule whereby defendants agreed not to depose Steffan until after filing their motion on September 18. Mr. Wolinsky further asserted that before allowing plaintiff to be deposed he would require (1) disclosure of certain documents sought in an earlier discovery request, and (2) the deposition of a Navy representative who was knowledgeable about the rationale for the Navy's policies concerning homosexuals.

Defendants denied the existence of such an agreement. In their view, plaintiff was simply demanding discovery concessions prior to agreeing to appear for a properly noticed deposition.

Plaintiff moved for a protective order. Defendants moved for sanctions under Rule 37(d) for plaintiff's failure to appear at his duly noticed deposition. At the request of counsel, the Court held a hearing to resolve the dispute and to determine whether sanctions were warranted. The hearing was held September 14. At its conclusion, the Court declined to impose sanctions but ordered that plaintiff's deposition be taken prior to defendants' submission of their motion for summary judg-

ment. During the hearing, the following exchange between the Court and plaintiff's counsel took place:

THE COURT: I want to fix a date for discovery. The deposition of the plaintiff. What do you come up with?

MR. WOLINSKY: Your Honor, let me just be clear on one thing. They're trying to turn a status case into a conduct case. In the administrative proceeding that they initiated, they discharged my client on the basis of his status. If he is asked at a deposition have you ever engaged in conduct I'm going to direct him not to answer.

THE COURT: And I'll direct him to answer.

MR. WOLINSKY: And we will then see where we are.

THE COURT: You know where you are right now. You've got to answer it or I'll dismiss your case. When are you going to have his deposition?

Transcript of September 14, 1989, at 16–17. The Court then ordered plaintiff's deposition to be taken two days later, on September 16. Defendants' motion for summary judgment was to be submitted two weeks after receiving the deposition transcript.

During the course of the deposition, plaintiff was asked a series of questions concerning whether he had ever engaged in "homosexual acts" as that term is defined by the Secretary of the Navy.[1] Plaintiff denied having engaged in homosexual acts prior to entering the Naval Academy in 1983. Deposition of Joseph Steffan ("Steffan Depo.") at 41–42. At the direction of Mr. Wolinsky, plaintiff refused to answer any questions related to whether he engaged in homosexual acts while attending the Academy or since departing from the Academy, on the grounds of relevance and fifth amendment privilege. Steffan Depo. at 40–45, 129–30.

During the deposition plaintiff also admitted that since departing from the Naval Academy in May, 1987 he has been tested

three times for the HTLV–3 antibody. Those tests were negative. When asked what prompted him to take the tests, Mr. Wolinsky objected to the question and directed his client not to answer, again asserting the grounds of relevance and fifth amendment privilege. *Id.* at 33–40. Steffan was also directed not to answer questions concerning whether two of his friends are homosexuals. *Id.* at 153.

Plaintiff's refusal to answer these deposition questions, in light of the Court's directive at the September 14 hearing, prompted defendants to file a renewed motion for sanctions and to stay all proceedings until plaintiff complied. The issue was fully briefed. At the request of counsel, the Court held a hearing on November 8. That hearing was short-lived. The Court explained that whether plaintiff had engaged in homosexual conduct was the "key" question in this case because plaintiff sought restoration to duty. Transcript of November 8, 1989, at 3. The following exchange then took place:

MR. WOLINSKY: Your honor, the deposition—Mr. Steffan is not going to be answering those questions.

THE COURT: All right. That's the clea[r] resolution then of what's before me at this point.

MR. WOLINSKY: Fine. Then I would ask your honor to enter an order of dismissal and we will take our appeal.

*Id.* at 4. This Memorandum elaborates the Court's reasons for finding that dismissal is warranted.

## II. DISCUSSION

It is elementary that in considering whether to award sanctions this Court must first determine that the information defendants seek is properly discoverable. Plaintiff insists that information concerning any homosexual conduct he may have engaged in either during or since his enrollment at the Naval Academy is not properly

---

1. *Secretary of the Navy's Instruction 1920.6A defines a "homosexual act" as:*

   Bodily contact actively undertaken or passively permitted between members of the same sex for the purpose of satisfying sexual desires.

discoverable, for two reasons: it is wholly irrelevant, and it is privileged.

## A. *Relevancy under the Federal Rules*

■ Plaintiff maintains that whether Steffan engaged in homosexual acts during or since being admitted to the Naval Academy is irrelevant to any claim or defense in this action.[2] The complaint alleges that Steffan was recommended for discharge from the Academy solely on the basis of his statements that he is homosexual. Throughout the administrative proceeding that gave rise to this lawsuit no evidence of homosexual conduct emerged, and Steffan was never asked whether he had engaged in homosexual conduct. Defendants in their answer do not plead as a defense that plaintiff is not entitled to relief because he engaged in homosexual conduct. In short, plaintiff maintains that evidence of homosexual conduct is irrelevant in an action challenging a separation based on status.

Defendants first argue that whether plaintiff engaged in homosexual conduct while a midshipman is necessary for the proper judicial resolution of this case. In their view, if plaintiff *did* participate in homosexual acts while attending the Naval Academy, then the application of the Navy's regulation in this case must be upheld under *Dronenberg v. Zech*, Slip Op., No. 81–0933 (D.D.C. Oct. 6, 1982) (Gasch, J.) (upholding Navy regulation mandating discharged for homosexual conduct), *aff'd*, 741 F.2d 1388 (D.C.Cir.1984), and *Beller v. Middendorf*, 632 F.2d 788 (9th Cir.) (upholding earlier version of same regulation), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1980). On the other hand, if plaintiff *did not* participate in homosexual acts while attending the Naval Academy, then the relevant caselaw is *Ben–Shalom v. Marsh*, 881 F.2d 454 (7th Cir.1989) (upholding Army regulation prohibiting reenlistment of an admitted homosexual, even though Army offered no evidence of homosexual conduct), *Woodward v. United States*, 871 F.2d 1068, 1075 (Fed.Cir.1989)

(upholding Navy's right to release admitted homosexual reservist from active duty and rejecting the "claim that homosexuality is constitutionally protected under the right of privacy"), and *Rich v. Secretary of the Army*, 735 F.2d 1220 (10th Cir.1984) (upholding Army's discharge of admitted homosexual who denied he was a practicing homosexual). In otherwords, defendants argue that any information regarding plaintiff's homosexual conduct is relevant to whether the Navy's actions in this case were justified.

Plaintiff does not challenge that portion of the regulations which require the discharge of an individual who is found to have engaged in homosexual conduct. Plaintiff's challenge is to that portion of the regulations which require the discharge of an individual who states he is a homosexual. The record is clear that plaintiff was separated from the Naval Academy based on his admissions that he is a homosexual rather than on any evidence of homosexual misconduct.

Plaintiff contends that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). But the holding in *Chenery* is less restrictive than plaintiff implies. Specifically, the Court concluded: "We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Id.* at 95, 63 S.Ct. at 462. If the holding in *Chenery* is applied to the question before the administrative proceeding at the Academy, the Academy's conclusion that an admitted homosexual could not be graduated should be sustained. *See Ben–Shalom*, 881 F.2d at 454; *Woodward*, 871 F.2d at 1068; *Rich*, 735 F.2d at 1220.

Plaintiff argues that the rule in *Chenery* applies equally in the context of military proceedings. Plaintiff cites *White v. Sec-*

---

**2.** Plaintiff denied having engaged in homosexual acts prior to entering the Naval Academy in

1983. Steffan Depo. at 41–42.

*retary of the Army*, 878 F.2d 501 (D.C.Cir. 1989), in which the Court stated: "The crux of the matter is that the Army may not retroactively justify an invalidated separation decision by relying on incidents of misconduct that may be found somewhere in a soldier's personnel file but were not charged in the original proceeding itself." *Id.* at 505. But *White* can be readily distinguished from this case. The plaintiff in *White* challenged his separation from the Army by means of an undesirable discharge, where it was undisputed that the special court martial proceeding below "had no power to direct the issuance of a dishonorable discharge under any circumstances," regardless of how bad the soldier's previous record had been. *Id.* at 503. In contrast, that the Academy in this case followed proper procedures and had the power to discharge Steffan under its existing regulations is undisputed.

It cannot be over-emphasized that this case involves a direct challenge to the judgment of the military. The Supreme Court has stated unequivocally that in evaluating the constitutionality of military restrictions, "courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986). In *Goldman*, the Supreme Court upheld an Air Force regulation that forbade the wearing of any headcovering indoors and any but regulation headcovering outdoors. Although this restriction directly infringed upon the plaintiff soldier's religious freedom by prohibiting his wearing of his yarmulke, the Court held that the Air Force's rationale for the regulation—the need for uniformity in military attire—was a subject best left to military judgment. The Court explained:

> Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps. The essence of military service "is the subordination of the desires and interests of the individual to the needs of the service."

*Id.* at 507, 106 S.Ct. at 1313, *quoting Orloff v. Willoughby*, 345 U.S. 83, 92, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953).

On precisely this rationale, the Court of Appeals for the Seventh Circuit recently upheld against constitutional challenge an Army regulation which prohibits the reenlistment of admitted homosexuals. *Ben-Shalom v. Marsh*, 881 F.2d 454 (7th Cir. 1989). Like plaintiff Steffan, the plaintiff in *Ben-Shalom* was an admitted homosexual. The Army refused her reenlistment on that basis without offering any evidence that she had engaged in homosexual conduct. *See id.* at 464. Like plaintiff Steffan, the plaintiff in *Ben-Shalom* challenged the regulation on both first amendment and equal protection grounds, arguing that the regulation infringed constitutional values but failed rationally to further a legitimate government purpose. The Seventh Circuit soundly rejected this argument, concluding that "it is the deferential standard of review that is applicable and the Army satisfies that standard without any difficulty." *Id.; see also Dronenburg v. Zech*, 741 F.2d 1388, 1398 (D.C.Cir.1984) (concluding that the unique needs of the military justify a discharge for homosexual conduct); *cf. Padula v. Webster*, 822 F.2d 97, 104 (D.C.Cir.1987) (concluding that the "specialized functions" of the FBI provide a rational basis for the FBI's decision not to hire a homosexual).

The issue of whether plaintiff engaged in homosexual acts during or since his enrollment in the Naval Academy is highly relevant to this lawsuit. Plaintiff seeks both declaratory and injunctive relief. Specifically, plaintiff seeks reinstatement in the Navy, award of a diploma, and receipt of a commission in the U.S. Navy. Plaintiff has not challenged the Navy's right to refuse reinstatement on the grounds that an individual has committed homosexual acts. In

these circumstances, the Court of Appeals for the First Circuit has stated that evidence of homosexual conduct is "highly relevant" to whether a plaintiff is entitled to relief such as reinstatement. *Matthews v. Marsh*, 755 F.2d 182, 183 (1st Cir.1985) (remanding district court's order reinstating plaintiff in ROTC in light of new evidence as to plaintiff's homosexual conduct). *Compare Watkins v. United States Army*, 875 F.2d 699, 711 n. 18 (9th Cir.1989) (en banc) (holding, on grounds of estoppel, that the Army was precluded from questioning a sergeant about his homosexual conduct).[3]

In plaintiff's view, evidence of homosexual conduct is not relevant to whether plaintiff is entitled to reinstatement. Plaintiff points out that had he been asked questions about his homosexual conduct in the administrative proceedings below, he could not have been discharged for his refusal to answer. This is so, he argues, because in an administrative discharge proceeding a respondent's election to remain silent "shall not be considered by the Board for any purpose on any issue before it." Navy Military Personnel Manual, Exhibit BB to Plaintiff's Opposition Memorandum, at 3640350.5.h. Plaintiff therefore argues that the line of questioning regarding his past conduct is irrelevant to this suit.

This Court will not speculate about what might have happened before the administrative tribunals. Plaintiff seeks reinstatement and other equitable relief through this Court. Plaintiff has not challenged the Navy's right to refuse reinstatement on the grounds that an individual has engaged in homosexual acts, and that issue is squarely raised by plaintiff's plea for affirmative injunctive relief. As such, whether or not plaintiff has engaged in homosexual acts is highly relevant to the disposition of this case. *Matthews*, 755 F.2d at 183.

### B. *The Fifth Amendment*

■ Plaintiff argues that even if the information defendants seek is of marginal relevance, the instant motion should be denied because the information sought is privileged under the fifth amendment. *See* Fed.R.Civ.P. 26(b)(1) (relevant matter excluded from discovery if privileged). The fifth amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The law is clear that the privilege may be asserted " 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.' " *Maness v. Meyers*, 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975), *quoting Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

Plaintiff points to 10 U.S.C. § 925 (criminalizing heterosexual and homosexual sodomy in military context) and Md.Ann.Code art. 27, §§ 553–54 (1982) (criminalizing heterosexual and homosexual sodomy), and argues that plaintiff's risk of prosecution is more than just "fanciful." Focusing on the various balancing tests enunciated by the courts, plaintiff argues that his asserted privilege should be upheld unless defendants can show that their need for the information is "substantial" or "crucial," or that the information "goes to the heart" of the lawsuit. *E.g., Black Panther Party v. Smith*, 661 F.2d 1243, 1272 (D.C.Cir. 1981), *cert. granted and vacated on other grounds*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982);[4] *International Union v. National Right to Work*, 590 F.2d 1139, 1152 (D.C.Cir.1978); *Bootz v. Childs*, 627 F.Supp. 94, 101 (N.D.Ill.1985). Plaintiff argues that defendants have failed to satisfy this stringent test.

Defendants attack plaintiff's claim to privilege on several grounds. They point out that the propriety of invoking the fifth amendment depends on whether the risk of prosecution is real and not merely "fanci-

---

**3.** In *Watkins,* the sergeant had admitted on his enlistment and reenlistment forms that he was a homosexual. *See* 875 F.2d at 701–03.

**4.** Although the D.C. Circuit's opinion in *Black Panther Party* was vacated as moot, the bal-

ancing test enunciated therein is still deemed valid. *See, e.g., ETSI Pipeline Project v. Arkansas Power & Light Co.,* 674 F.Supp. 1491, 1491 (D.D.C.1987) (Richey, J.).

ful." *In re Corrugated Container Antitrust Litigation*, 662 F.2d 875, 883 (D.C. Cir.1981). Defendants argue that plaintiff has failed to show any serious threat to his fifth amendment rights. In particular, since departing from the Naval Academy in April 1987, plaintiff has resided primarily in two states—North Dakota and New York. Neither state has a statute criminalizing sodomy. Defendants therefore argue that plaintiff should at least be required to testify about homosexual acts committed since his departure from the Naval Academy.

Defendants also emphasize that their need for the information is indeed "substantial" and "crucial." They point out that the Naval Investigative Service ("NIS") was actively seeking information concerning plaintiff's homosexual conduct, but plaintiff through his resignation effectively preempted any possible findings. *Hirshberg v. Cooke*, 336 U.S. 210, 216, 69 S.Ct. 530, 533, 93 L.Ed. 621 (1949) (Navy lacks jurisdiction to initiate court-martial proceeding against a discharged serviceman); *cf. Toth v. Quarles*, 350 U.S. 11, 23, 76 S.Ct. 1, 8, 100 L.Ed. 8 (1955) (Air Force could not constitutionally subject ex-serviceman to trial by court-martial). Under these circumstances, defendants believe it would be unfair to allow plaintiff to use the fifth amendment as both sword and shield to conceal information that is highly relevant to this suit which seeks reinstatement.

Clearly, where a plaintiff voluntarily comes into court to assert claims against a defendant, he cannot utilize his constitutional privilege as a sword to frustrate the defendant's right to prepare a defense. *E.g., McDonald v. Head Criminal Court Supervisor Officer*, 117 F.R.D. 55, 57 (S.D. N.Y.1987); *Sindona v. Tisch*, 27 Fed.R. Serv.2d 404, 406 (S.D.N.Y.), *aff'd mem.*, 610 F.2d 807 (2d Cir.1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980).

The Court agrees with defendants that their need for the information is substantial. In seeking reinstatement and award of his diploma, plaintiff through his claims has placed in issue whether he is qualified for such relief. Moreover, defendants clearly are entitled to information necessary to defend against plaintiff's claims to such relief.

The Court is aware that, despite its earlier warnings, dismissal of this suit is by no means automatic, that "some balancing of the parties' interests" is required, and that "efforts at accommodation of both sides must be made." *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928, 953 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). The Court has balanced these interests and believes that defendants are entitled to the discovery they seek. Efforts at accommodation have failed and it is clear they will continue to fail. Plaintiff received a clear warning that dismissal of his suit would result should he fail to answer defendants' deposition questions. Plaintiff was fully aware of this potential result. *See* Steffan Depo. at 35–36, 38–39.[5] Dismissal by a district court is proper where a party has been given a "crystal clear warning" of the sanction it could expect. *Founding Church of Scientology of Washington, D.C. v. Webster*, 802 F.2d 1448, 1459 n. 15 (D.C.Cir.1986), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987).

This Court has also taken into consideration the possibility of lesser sanctions than dismissal. Although some courts have stayed a civil action until the plaintiff is no longer in danger of prosecution, *e.g., Black Panther Party*, 661 F.2d at 1274; *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1206 (Fed.Cir.1987) (court stayed plaintiff's obligation to respond for three years); *Wehling v. Columbia Broadcasting Sys-*

---

**5.** In directing plaintiff not to answer during his deposition, Mr. Wolinsky stated at one point:
[N]ow I recognize that Judge Gasch has stated that the case will be dismissed if I directed Mr. Steffan not to answer, and with all respect to the Court, I disagree as to whether that can be done, and I believe that once the issue is fully briefed to the Court, for Judge Gasch, he will agree with me. If he does not, I believe that when the issue is presented to an appellate court, the appellate court will agree with us, and on that basis, that is the basis for my direction.
Steffan Depo. at 38–39.

*tem*, 608 F.2d 1084, 1089 (5th Cir.1979) (same), neither defendants nor plaintiff endorses this alternative. Defendants suggest that the Court enter an order under Rule 37(b)(2)(A) establishing as a fact that plaintiff has engaged in homosexual acts, and then dismissing the case pursuant to *Dronenburg v. Zech*, 741 F.2d 1388 (D.C. Cir.1984) (in which the Court upheld a Navy regulation mandating discharge for homosexual conduct). But this Court will not go so far. There is certainly no indication that plaintiff would prefer this alternative to dismissal for failure to comply with discovery. Nor is the Court persuaded that such an alternative is warranted under the law.

### III. CONCLUSION

The Court finds that information regarding plaintiff's past homosexual conduct is highly relevant to the relief plaintiff seeks. Defendants' need for the information is therefore substantial. Plaintiff cannot utilize his fifth amendment privilege as a sword to frustrate defendants' right to obtain relevant information or prepare a defense where plaintiff himself has initiated the lawsuit. Plaintiff has refused, and continues to refuse, to answer questions the Court holds are clearly relevant and properly discoverable. Plaintiff's complaint is therefore dismissed.