**Kimberly S. ROETENBERG, (AKA Kimberly S. Lambert), Plaintiff,**

**v.**

**SECRETARY OF THE AIR FORCE, Defendant.**

**Civil Action No. 99–875–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 10, 1999.

---

632

Guy J. Ferrante, King & Everhard, P.C., Falls Church, VA, for plaintiff.

William L. Small, Special Assistant U.S. Attorney, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Administrative Procedure Act[1] ("APA") suit for review of final agency action, plaintiff claims that her General Discharge from the Air Force was contrary to law because she was denied an opportunity to testify and present evidence at a live hearing before the Air Force Board for Correction of Military Records ("AFBCMR").

### I.

The salient facts are not disputed. Plaintiff attended Rensselaer Polytechnic Institute ("RPI") in Troy, New York, on an Air Force Reserve Officers Training Corps ("ROTC") scholarship. In this regard, she signed an educational contract with the United States, in which she agreed to serve a period of active duty as a commissioned officer in the Air Force in return for government funding of her education. Included in the contract was a provision requiring plaintiff to reimburse the government proportionally should she fail to complete the requisite period of active duty service in the Air Force because of her own misconduct.[2] In addi-

tion, the contract stated that "[m]isconduct separation may be initiated by the Air Force in accordance with its governing directive for substandard duty performance . . ., unacceptable conduct, moral or professional dereliction, or in the interest of national security."

While plaintiff was an ROTC cadet at RPI, she began a clandestine sexual relationship with her married, much-older ROTC instructor, Major Timothy Seratt. Upon her graduation from RPI, in May 1990, plaintiff was commissioned as a second lieutenant in the U.S. Air Force Reserve. In June 1990, while plaintiff was awaiting orders to commence her tour of active duty, the Air Force received a letter from plaintiff's ex-fiancé,[3] alleging that plaintiff was involved in a sexual relationship with Major Seratt. On July 5, 1990, the Air Force appointed Colonel Kenneth J. Lawrence to conduct a preliminary inquiry into the allegations that Major Seratt had engaged in unprofessional conduct with an ROTC cadet. During the course of this investigation, plaintiff initially made false statements under oath denying the affair, but later admitted to having a then-ongoing intimate relationship with Major Seratt. As a result of the investigation, Colonel Lawrence concluded that Major Seratt had engaged in serious improper conduct warranting a trial by courts-martial. Major Seratt resigned rather than face a trial.[4]

On August 15, 1990, plaintiff was called to active duty. Less than two weeks later, however, plaintiff's active duty orders were canceled pending the outcome of a second investigation, this one focusing on her conduct. Eleven months later, on July 30,

---

1. *See* 5 U.S.C. § 702.

2. Specifically plaintiff agreed as follows:
 [I]f I voluntarily or because of misconduct or other circumstances within my control fail to complete the period of active duty specified in this contract, either as an officer or in enlisted status, I will reimburse the United States in an amount that bears a ration to the total cost of advanced edu-

 cation provided to me as the unserved portion of active duty bears to the total period of active duty I agreed to serve.

3. Plaintiff's ex-fiancé was a fellow Air Force ROTC cadet at RPI.

4. As a consequence of his resignation, Major Seratt forfeited all service-related benefits, including his pension.

1991, plaintiff was notified that an administrative discharge action had been initiated against her for "Serious or Recurring Misconduct." The notification set forth the allegations of misconduct and informed plaintiff of her right to counsel and to submit statements or documents to the administrative discharge board. Included with the notification was a "Statement of Selection of Options" form, which plaintiff returned indicating that she wished to appear before the administrative discharge board accompanied by counsel. Plaintiff was subsequently notified, however, that she had not received the correct form and that she did not have the right to appear in a hearing before the administrative discharge board. Under Air Force regulations, as a probationary officer—one with less than three years of service—plaintiff was not entitled to appear in person before the discharge authority unless she was facing a discharge under other-than-honorable conditions, which she was not.[5] *See* AFR 35–41, Vol. III, ¶ 3–7. Plaintiff then submitted a corrected "Statement of Selection of Options" form, indicating that she was unwilling to resign and wished to comment in writing.

The Air Force Personnel Board reviewed the documentary record and recommended that plaintiff receive a General Discharge. The recommendation of the Personnel Board was approved on April 28, 1992, and on May 21, 1992, plaintiff was issued a General Discharge. On June 1, 1992, plaintiff was notified by the Defense Finance and Accounting Service ("DFAS") that she was indebted to the government in the amount of $50,491.90 for her educational expenses pursuant to the Air Force ROTC contract she signed and 10 U.S.C. § 2005(a)(3). The letter incorrectly noted that plaintiff had resigned from the Air Force. Plaintiff was sent another letter in July 1992 demanding payment of this debt within 30 days; this letter incorrectly stated that plaintiff had *disenrolled* from the Air Force ROTC. Plaintiff informed DFAS that she disputed the debt. DFAS responded that the debt was valid and due.

In February 1993, plaintiff filed an application with the AFBCMR requesting that her military records be corrected to eliminate her indebtedness to the United States and to upgrade her discharge from "General" to "Honorable." The AFBCMR sought an evaluation from the Air Force office responsible for the issues raised in plaintiff's application, which, in this case, was the Air Reserve Personnel Center Staff Judge Advocate's office. Plaintiff was notified that the AFBCMR was seeking an evaluation from the Judge Advocate and was given an opportunity to respond to the evaluation in writing, which she did. The AFBCMR, however, denied plaintiff's request for a hearing, stating that the case was adequately documented and plaintiff's personal appearance would not add materially to the Board's understanding of the issues. In its final decision, the AFBCMR adopted the recommendation of the Judge Advocate and concluded, on the basis of the documentary record, that plaintiff's inability to complete her service requirement was due to her misconduct, and consequently there was "no basis upon which to recommend favorable action."

In September 1998, plaintiff filed a suit in the Court of Federal Claims, which was subsequently dismissed without prejudice. Ten months later, plaintiff filed the instant lawsuit seeking judicial review under the APA on the grounds that the AFBCMR's decisions (i) not to upgrade her discharge from "General" to "Honorable" and (ii) not to excuse her educational debt to the United States were arbitrary, capricious, unsupported by substantial evidence and contrary to law. Defendant attacks plaintiff's suit on two grounds. First, defendant claims that plaintiff's suit should be dismissed for lack of subject matter jurisdiction because the claim falls under the ex-

---

**5.** There are three types of military discharges. The vast majority of discharges are Honorable Discharges. There are also General Discharges and Discharges under "other than honorable circumstances." *See* Air Force Regulation ("AFR") 35–41, Volume III, ¶ 3–7.

clusive jurisdiction of the Court of Federal Claims. In the alternative, defendant moves for summary judgment on the ground that the decision of the AFBCMR was proper and supported by the record, and that plaintiff is justly indebted to the United States. In response, plaintiff denies defendant's jurisdictional claim, and seeks summary judgment on the ground that the AFBCMR decision, which is properly subject to judicial review, was contrary to law and must be reversed.

## II.

### A. Dismissal for Lack of Jurisdiction

Defendant claims that this Court lacks subject matter jurisdiction over plaintiff's complaint because the complaint, although styled as a prayer for equitable relief, is actually a claim for money damages against the United States, and therefore must be brought in the Court of Federal Claims. Plaintiff responds that she does not seek a money judgment against the United States, but rather her claim is for the reversal of an adverse agency decision, and, as a result, is properly before this Court under the APA.

The standard applicable to a threshold dismissal motion is too well-settled to be disputed. In essence, on a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff, all facts asserted therein must be taken as true, and dismissal is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Bruce v. Riddle,* 631 F.2d 272, 273–74 (4th Cir.1980).

 It is clear that federal courts lack the authority to consider and grant relief against the United States absent explicit congressional consent to waive sovereign immunity. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Two distinct categories of waivers are pertinent here. First, the APA, the jurisdictional basis of plain-

tiff's suit, provides a limited waiver of sovereign immunity for certain suits seeking relief other than money damages. *See Randall v. United States,* 95 F.3d 339, 346 (4th Cir.1996); 5 U.S.C. § 702. Judicial review of military record corrections board decisions is available in the federal district courts under the APA. *See Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Second, the Tucker Act, 28 U.S.C. § 1346(a)(2) and § 1491, provides a limited waiver of sovereign immunity for non-tort claims against the United States founded upon federal constitutional or statutory authority that seek money damages in excess of $10,000. *See* 28 U.S.C. § 1491; *Randall,* 95 F.3d at 339. Unlike APA claims, Tucker Act claims must be brought in the Court of Federal Claims. This grant of jurisdiction to the Court of Federal Claims, and its predecessor, the Court of Claims, includes claims of members of the armed services alleging unlawful separation and requesting back pay and reinstatement. *See Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979). The question presented here is which of these two limited waivers of sovereign immunity and grants of jurisdiction applies to the instant complaint.

 The Court of Federal Claims is not the proper forum for plaintiff's claim. Defendant's attempt to re-characterize plaintiff's claim as one that seeks monetary relief against the United States is unpersuasive. Plaintiff is seeking to be released from an obligation to pay money to the United States; she is not seeking any money from the United States. It is plain that plaintiff's claim is for judicial review of an adverse agency decision, and she prays for injunctive relief, namely the reversal of the AFBCMR's decision. To be sure, a financial benefit to plaintiff and a financial detriment to the government would flow from a decision that plaintiff's military record should be corrected and that she therefore does not have to repay the Air Force for her educational expenses. Yet, this does not mean that

plaintiff's complaint is a claim for money damages against the government; instead the financial benefit *or detriment is merely a potential consequence of the equitable relief sought.* It is settled that where, as here, the essence of a claim is the equitable relief sought, and any financial ramifications of a favorable decision are subordinate to the equitable relief, the Court of Federal Claims does *not* have exclusive jurisdiction over that claim. *See Randall,* 95 F.3d at 347. Indeed, a federal district court is the *only* appropriate forum for plaintiff's claim because the Court of Federal Claims can exercise its power to grant equitable relief only "incident of and collateral to" rendering a money judgment. *See Randall,* 95 F.3d at 347 ("The injunctive relief requested by plaintiff would not be available under the Tucker Act because it would not be incident of, or collateral to, a monetary award."). As plaintiff is not seeking monetary relief, the Court of Federal Claims would be powerless to award her the relief she seeks here. Accordingly, defendant fails in its jurisdictional challenge to plaintiff's complaint.

### B. The AFBCMR Decision

On the merits, plaintiff claims that the decision of the AFBCMR was contrary to law and must be reversed because she was denied a personal hearing as required by the Due Process Clause. Defendant responds that under the deferential standard afforded to the decisions of military record correction boards, the AFBCMR's decision in this case should be upheld because plaintiff received all the process to which she was entitled.

■■■ It is well-settled that a final decision of military records correction boards, like the AFBCMR's decision here, is judicially reviewable as a "final agency action" for the purposes of the APA. *See Chappell,* 462 U.S. at 303, 103 S.Ct. 2362; *Frizelle v. Slater,* 111 F.3d 172, 176 (D.C.Cir.1997).

The appropriate standard of review of a military records correction board decision is whether it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See White v. Secretary of Army,* 878 F.2d 501, 503 (D.C.Cir.1989). Under this standard, plaintiff has the burden of showing by cogent and clearly convincing evidence that the military decision was the product of material legal error or injustice. *See McDougall v. Widnall,* 20 F.Supp.2d 78, 82 (D.D.C.1998); *see also Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986). In this regard, courts should accord great deference to a AFBCMR decision,[6] and review of that decision is not *de novo,* but rather is limited to the administrative record. *See McDougall,* 20 F.Supp.2d at 82; *see also Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■■■ Plaintiff was certainly entitled to some process before receiving a seriously stigmatizing General Discharge,[7] and having a $50,000 debt imposed on her, because "stigma can not be imposed by the government without due process of law,"[8] and the imposition of a $50,000 debt implicates plaintiff's property interests. Yet, plaintiff received all the process to which she was entitled, namely notice of the action against her and an opportunity to respond. Under the governing law and Air Force regulations, plaintiff was not entitled to a full discharge board hearing because she was a probationary officer with less than three years service. *See* 10 U.S.C. § 1163(a); AFR 35–41, Vol. III, ¶ 3–7. Under Air Force regulations, probationary officers who are facing discharge for serious and recurring misconduct are only entitled to an administrative discharge board hearing if a discharge "under other than honorable conditions" is recommended, which did not occur in plaintiff's case. *See* AFR 35–41, Vol. III, ¶ 3–7. And, regulations such as these, which provide for a personal hearing only in certain circum-

---

6. *See Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1514 (D.C.Cir.1989).

7. *See White,* 878 F.2d at 503 ("A discharge characterized as anything other than honor-

able carries with it ... a serious stigma....").

8. *Holley v. United States,* 124 F.3d 1462, 1470 (Fed.Cir.1997).

stances, have been found to provide adequate process to probationary officers. *See Holley,* 124 F.3d at 1469; *see also Guerra v. Scruggs,* 942 F.2d 270, 279 (4th Cir.1991) (service member who had served less than six years and received a General Discharge without a hearing did not have a Due Process claim).

The Federal Circuit's decision in *Holley* is instructive, if not controlling, here. There, the plaintiff, an Army officer with less than five years of service who had received a General Discharge for discussing the use of illegal drugs, claimed he had not had an adequate opportunity to defend against the discharge and that a hearing was required given the stigmatizing nature of the General Discharge.[9] *See Holley,* 124 F.3d at 1464. In upholding the Army records correction board's decision, the Federal Circuit concluded that "when the elements of a stigmatizing discharge are present, the remedy mandated by the Due Process Clause ... is an opportunity to refute the charge," but that in the absence of evidence that the derogatory information about the affected party is false, the nature of the interest to be protected is not one that requires a hearing. *See id.* at 1470.

Despite plaintiff's attempts to distinguish it factually, *Holley* is directly on point and clearly demonstrates that plaintiff was not denied due process. Here, as there, plaintiff was a probationary officer who was given a General Discharge. Here, as there, plaintiff does not claim that the charges against her, namely that she had an improper relationship with a superior officer and lied about it under oath, are false. And, here, as there, plaintiff was given notice of the allegations against her and an opportunity to respond to them in writing, which, given the nature of the interest to be protected, was sufficient to meet the minimum requirements of due process. Accordingly, the AFBCMR's decision not to allow plaintiff a hearing was not contrary to law.

Nor is there any evidence to suggest that plaintiff is not justly indebted to the United States for her educational expenses. The requirements of the governing statute, 10 U.S.C. § 2005, and the contract signed by plaintiff demonstrate that plaintiff may be held liable for her educational expenses in light of her inability to complete her service requirement due to her own misconduct. *See United States v. McCrackin,* 736 F.Supp. 107, 111 (D.S.C. 1990), *aff'd mem.,* 929 F.2d 695 (4th Cir. 1991). Plaintiff's discharge from the Air Force was lawful, given her admitted misconduct, and she received all the due process to which she was entitled at the administrative level. Thus, the government is justified in seeking reimbursement of plaintiff's educational expenses. *See id.* at 113. While it is true that the first two letters plaintiff received from DFAS regarding her debt misstated the reasons that plaintiff had been separated from the Air Force, these minor clerical errors are of no legal significance. The AFBCMR correctly noted that the basis for the imposition of the debt was plaintiff's general discharge based on her misconduct, which is a proper basis for the government's recoupment of educational expenses under 10 U.S.C. § 2005.

### III.

In conclusion, jurisdiction is proper in this Court because plaintiff's claim is not one for monetary relief against the United States. Thus, defendant's motion to dismiss for lack of jurisdiction must be denied. Defendant's motion for summary judgment must be granted because plaintiff has failed to show that she was denied due process, and therefore the AFBCMR's decision should be upheld as not contrary to law.

An appropriate order will enter.

---

9. The plaintiff in *Holley* properly brought his suit in the Court of Federal Claims because he sought back pay as well as reinstatement. *See id.* at 1466.